BECKON, Appellant, v. EMERY, Chief of Police, Respondent.

*October 4—October 31, 1967.*

512

For the appellant there was a brief by *Klabacka & Schernecker* of Madison, and oral argument by *James G. Schernecker*.

For the respondent there was a brief by *Edwin C. Conrad* of Madison, city attorney, and *James G. Lawrence*, assistant city attorney, and oral argument by *Mr. Lawrence*.

HEFFERNAN, J. The petitioner relies upon sec. 18.01 (1) and (2), Stats., which provide:

"18.01 **Custody and delivery of official property and records.** (1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.

"(2)   Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof may prescribe, examine or copy any of the property or things mentioned in sub. (1)."

The respondent would attempt to deny the applicability of the statutes on the theory that the reports are the records prepared by a municipal employee, a traffic patrolman, and not of a public officer. The city attorney's argument is that only the records prepared by a public officer are "examinable" under this statute. Such interpretation is fatuous and clearly contrary to the plain meaning of the statute.

The plain meaning of the statute is that for the purpose of fixing responsibility, under this public records section every municipal officer is considered to be the custodian of all property and things which are in the possession or control of himself or his deputies, all as spelled out more explicitly in the statute. It is apparent that his responsibility is vicarious. He is the custodian under the law even of "all property and things" that are not in his personal possession, but are merely property or things the possession to which his deputies may be lawfully entitled. He may be, under certain circumstances, the custodian of things received from "other persons" who may be members of the public and not employees or officers of the department at all.

It is perfectly clear that the police chief is, under sec. 18.01 (1), Stats., the custodian of:

". . . all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers."

The traffic citations, though not prepared by a public officer, were undisputedly such things or property as were required to be filed in the police department. The

chief of police under the statutes was then their responsible custodian and, hence, a request to him, as was alleged here, or to one of his duly authorized agents or subordinates, was sufficient to trigger the procedures that have been developed by this court to insure the right to the reasonable examination of public records.

The fact that the documents are encompassed within the purview of sec. 18.01, Stats., and a request for their inspection is made upon the proper person, does not ipso facto mean that they must be produced for inspection. In *State ex rel. Youmans v. Owens* (1965), 28 Wis. 2d 672, 681, 137 N. W. 2d 470, 139 N. W. 2d 241, we pointed out that:

". . . the right to inspect public documents and records . . . is not absolute. There may be situations where the harm done to the public interest may outweigh the right of a member of the public to have access to particular public records or documents. Thus, the one must be balanced against the other in determining whether to permit inspection."

We outlined with care the procedure to be followed in arriving at that determination. When a request is made of a custodian of public records to produce documents for inspection, it is incumbent upon him to weigh the competing values involved in terms of the public interest. He must bear in mind that public policy, and hence the public interest, favors the right of inspection of documents and public records. It is only in the unusual or exceptional case, where the harm to the public interest that would be done by divulging matters of record would be more damaging than the harm that is done to public policy by maintaining secrecy, that the inspection should be denied. Accordingly, we said in *Youmans, supra,* page 682:

". . . it is incumbent upon him to refuse the demand for inspection and state *specifically* the reasons for this refusal." (Emphasis supplied.)

In *Youmans,* we pointed out that when the request was made upon the mayor for the production of the investigation reports, the request was denied without reasons being stated for the denial. We therein stated that the mayor, although contrary to what this court deemed his lawful obligation, gave no reason for refusing the inspection.

"No prior Wisconsin case has laid down the requirement that the public officer who refuses a request to permit inspection of public records because he believes it harmful to the public interest, or because it would unduly damage reputations, must justify such refusal by specially stating his reasons therefor. Accordingly, although defendant failed to state a valid reason for his determination to refuse inspection to petitioner, we conclude that justice requires that the cause be remanded to the circuit court so that court can make a proper determination as to whether inspection should be granted under the guidelines herein laid down." (p. 685a.)

There was an implicit caveat in that statement that had *Youmans* not been the seminal case we would have granted the writ without further hearing by the trial court.

The mandate in *Youmans* was dated November 2, 1965, and the motion for rehearing was denied on January 19, 1966. The original demand for the traffic citations was made upon Chief Emery on October 21, 1966. Thus, almost a year after the explicit directions in *Youmans,* the chief of police failed to state specifically or specially the reasons for his refusal, as he was required to do, and without giving any reason whatsoever, denied the right of inspection.

Subsequently, counsel for the chief of police have contended that the reports were "confidential" or that it was "contrary to the public interest" that the reports be made public. These, of course, are not specific reasons required by law. They are legal conclusions that can only be

reached after a factual determination to be made initially by the custodial officer and eventually, if the matter reaches litigation, by the courts. We pointed out in *Youmans* that if an action were brought to compel the production of documents the officer could then, if he wished, stand upon the reasons given, and the documents could be examined by the court *in camera* to determine whether in light of the reasons specified the inspection of the documents would cause harm to the public interest that would outweigh the presumptive benefit to be derived from granting inspection.

In the instant case the failure of the custodial officer to state with specificity his reasons for withholding public records made it impossible for the courts to make the contemplated review. No doubt a number of plausible and perhaps valid reasons for withholding these documents could have been specified and, if so specified, the trial court might after the determination outlined in *Youmans* have upheld the police chief's determination. But no reason was given, and from the record it is obvious that no attempt was made by the chief of police or his representatives to comply with *Youmans* and its rationale.

We thus conclude, consistent with the admonition of *Youmans,* that where, as here, no specific reason was given for withholding a public record from inspection, the writ of mandamus compelling its production should issue as a matter of course.

The respondent contends that mandamus will not lie because it was within the discretion of the custodial officer to withhold the documents. This is not correct. We pointed out in *Youmans* that public policy favors the production of official documents, and their nonproduction is justified only if the reasons stated show that this policy favoring the "right to know" should be subordinate to other public interest. In short, there is an absolute right to inspect a public document in the absence of specifically stated sufficient reasons to the contrary. Mandamus is the proper remedy to test the reasons for

withholding documents or records from inspection. In Wisconsin we have traditionally tested the right to inspection by the use of mandamus, *e. g.*, *Youmans, supra,* and *International Union v. Gooding* (1947), 251 Wis. 362, 29 N. W. 2d 730.

*By the Court.*—The order of the trial court is reversed, and the cause is remanded to the circuit court for the issuance of the writ of mandamus compelling the respondent to produce for inspection purposes certain traffic citations, in their entirety, as prayed for in the appellant's petition, and for such further proceedings as the circuit court may deem necessary, in a manner not inconsistent with this opinion.