PATRICK J. LUCEY, Governor
You request my opinion as to the scope of your duty, if any, to allow members of the public to examine and copy documents in your office of which you have official custody as Governor.
Your inquiry is occasioned in part by a request from a citizen to examine all correspondence addressed to you concerning a bill recently passed by the legislature. However, you are also concerned with any duty you have to permit examination with respect to the following:
"(1) Correspondence
 "(a) concerning or explaining legislation or other matters of general concern or official policies and actions;
 "(b) concerning problems involving either (i) the policies or practices of a governmental agency or official or (ii) matters not involving governmental action or public policy and directly affecting the correspondent or another;
 "(c) concerning complaints against or allegations of any kind of misconduct by public officials or others;
"(d) obtained by me upon my promise of confidentiality;
 "(e) expressly (e.g., marked as `confidential' or `personal') or implicitly designated in some way as private by the correspondent; *Page 401 
 "(f) whether or not otherwise subject to disclosure, containing defamatory or other matters adversely reflecting upon the reputation of any person.
 "(2) Memoranda or working papers of any sort prepared by members of the staff of the Executive Office or other governmental (federal, state or local) agency for their own or my use in the conduct of official State business."
It will be impossible in this opinion to answer with specificity all of the possible questions involved or implied with respect to the above or connected with the four other questions you raise which will be set forth hereunder. Your determination to permit or withhold inspection must be made on a case-by-case basis in view of the specific document, time elements and all other circumstances then and there existing. Specific legal advice can best be given on the same basis.
I am of the opinion that all of the correspondence, documents and memoranda referred to above, with the exception of truly personal correspondence or purely fugitive papers having no relation to the function of your office, are public records within the meaning of secs. 16.80 (2) (a), 19.21 (1), Stats., and are by reason of sec. 19.21 (2), Stats., available to any citizen for purposes of inspection and copying subject to the limitations
contained in State ex rel. Youmans v. Owens (1965), 28 Wis.2d 672,137 N.W.2d 470 and Beckon v. Emery (1967), 36 Wis.2d 510,153 N.W.2d 501.
Response to your inquiry requires limited discussion of the separation of powers doctrine.
In our constitutional scheme there are three coordinate, substantially independent branches; namely, executive, legislative, and judicial. Each, so long as operating within its legitimate field, is supreme. It is for the court, in the ultimate, to determine whether the boundaries of a particular field have been overstepped and, if so, to nullify or stay the transgression. The power to make a law is vested in the Senate and Assembly. State ex rel. Mueller v. Thompson (1912), 149 Wis. 488,491, 137 N.W. 20.
The legislature cannot interfere or preclude the exercise of constitutionally conferred executive power. Where the Constitution does not otherwise provide or preclude, the legislature has power to *Page 402 
enact a law which the executive is constitutionally bound to faithfully execute. Where the Constitution or a statute vests discretion in the chief executive officer, neither the legislature nor the courts can control its exercise so long as it continues to be vested in him. State ex rel. Warren v. Nusbaum
(1973), 59 Wis.2d 391, 450, 208 N.W.2d 780.
The Governor and his agents are liable to judicial remedies, when not acting within the scope of executive authority, in violation of law or in excess of their powers, the same as other persons, and the court has power but will not act coercively as to the Governor except in cases of extreme urgency. The acts of the Governor within the exercise of his lawful authority are not subject to judicial review. Ekern v. McGovern (1913), 154 Wis. 157,208, 142 N.W. 595.
I am aware of no constitutional provision or statute which by express language or necessary implication makes any of the public records in your custody confidential or otherwise absolutely privileged which would absolve you from the requirement of compliance with the provisions of sec. 19.21 (2), Stats., as limited.
Section 19.21 (1), (2), (3), (4), Stats., provides:
 "19.21 Custody and delivery of official property and records. (1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.
 "(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1). Any person may, at his own expense and under such reasonable regulations as the custodian prescribes, copy or duplicate any materials, including but not limited to blueprints, slides, photographs and drawings. Duplication of university expansion *Page 403 
materials may be performed away from the office of the custodian if necessary.
 "(3) Upon the expiration of his term of office, or whenever his office becomes vacant, each such officer, or on his death his legal representative, shall on demand deliver to his successor all such property and things then in his custody, and his successor shall receipt therefor to said officer, who shall file said receipt, as the case may be, in the office of the secretary of state, county clerk, town clerk, city clerk, village clerk, school district clerk, or clerk or other secretarial officer of the municipality or district, respectively; but if a vacancy occurs before such successor is qualified, such property and things shall be delivered to and be receipted for by such secretary or clerk, respectively, on behalf of the successor, to be delivered to such successor upon the latter's receipt.
 "(4) Any person who violates this section shall, in addition to any other liability or penalty, civil or criminal, forfeit not less than $25 nor more than $2,000; such forfeiture to be enforced by a civil action on behalf of, and the proceeds to be paid into the treasury of the state, municipality, or district, as the case may be."
Section 16.80 (2), Stats., is applicable to records in the office of the Governor and provides, in part:
"(2) DEFINITIONS. As used in this section:
 "(a) `Public records' means all books, papers, maps, photographs, films, recordings, or other documentary materials or any copy thereof, regardless of physical form or characteristics, made, or received by any agency of the state or its officers or employes in connection with the transaction of public business and retained by that agency or its successor as evidence of its activities or functions because of the information contained therein; except the records and correspondence of any member of the state legislature.
 "(b) `State agency' means any officer, commission, board, department or bureau of state government.
"***" *Page 404 
Section 16.80 (4), Stats., provides:
 "(4) APPROVAL TO DESTROY. All public records made or received or in the custody of a state agency shall be and remain the property of the state and as such may not be destroyed without the written approval of the originating office or its legal successor and the written approval of the public records board."
In an opinion to the Chairman of the State Public Records Board dated July 24, 1974, it was stated in part:
 "Under general law in the United States, public records are the property of the state or other unit of government and not of the individual or officer who happens at the moment to have them in possession. When they are deposited in the place designated for them by law, they must remain and can be removed, transferred, or disposed of only as provided by statute. 66 Am. Jur. 2d, Records and Recording Laws, sec. 10, p. 347.
"***
 "Independent of statute, `public records' include not only papers specifically required to be kept by a public officer, but all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate, or customary method of discharging the duties of the office. International Union v. Gooding
(1947), 251 Wis. 362, 29 N.W.2d 730.
 "Section 19.21 (1), Stats., goes much further than this in defining public records in Wisconsin. However, even the International Union case recognizes that this section does not require an officer to keep, file, and ultimately deliver to his successor every paper or communication without respect to the relation of the paper to the functions of the office but that an officer may dispose of purely fugitive papers having no relation to the function of the office. 38 OAG 22, 23 (1949).
 ". . . [The definition in sec. 16.80 (2) (a), Stats.] is a codification of case law with respect to the definition of public records. It recognizes that an officer has the right to determine whether a paper which is not required by law or valid rule to be *Page 405 
filed, deposited, or kept in his office, should be retained as evidence of the activities or functions because of the information contained therein.
 "I am of the opinion that officers covered by sec. 19.21 (1) and (3), Stats., have the same power and that such power permits the destruction of fugitive papers, scrap paper, and in some cases, preliminary work sheets, drafts, surplus copies, etc.
 "A given paper may be a public record within the meaning of sec. 19.21 (1), Stats., for the purposes of inspection and copying as long as it is in the lawful possession or control of an officer, or his deputies, but may not necessarily be one which said officer is required to preserve under sec. 19.21 (1), Stats., or to deliver to his successor under sec. 19.21 (3), Stats. Under the latter statute he need only deliver `all such property and things then in his custody.' There are many documents which may lawfully come into the hands of a public officer over which he is only entitled to temporary custody and which may or must be surrendered to the person owning the same or for other purposes. For example, certificates of bonds must be delivered when sold or at maturity."
You inquire what materials, if any, are absolutely privileged.
It is my opinion that none of the documents you refer to are absolutely privileged in the sense that you can unilaterally and absolutely deny disclosure. A member of the public would have the right to institute "mandamus" in Circuit Court for Dane County to determine whether the document or other item sought to be inspected was in fact a public record within the meaning of secs. 16.80 (2) (a), 19.21 (1), Stats., and to test any reason given for denial of inspection.
You further inquire what factors may be properly considered in deciding whether to disclose.
The leading Wisconsin cases governing the right to public access are State ex rel. Youmans v. Owens (1965), 28 Wis.2d 672,137 N.W.2d 470 and Beckon v. Emery (1967), 36 Wis.2d 510,153 N.W.2d 501. *Page 406 
These cases essentially hold, as elaborated in 58 OAG 67 (1969), 60 OAG 9 (1971), 60 OAG 43 (1971), 60 OAG 284 (1971), 60 OAG 470 (1971), 61 OAG 12 (1972), 61 OAG 361 (1972), that:
 1. The public right to full access to all public records provided for in sec. 19.21 (2), Stats., is qualified in the following respects:
 a. The right to inspect is subject to such reasonable regulations with respect to hours, procedure, etc., that the custodian may prescribe to limit unreasonable interference with the ordinary operations of his office.
 b. The right may be limited or denied by express statutory provision.
 c. The custodian may and has a duty to deny inspection where he determines that permitting inspection would result in harm to the public interest which outweighs any benefit that would result from granting inspection. Specific reasons must be given when inspection is withheld and the person seeking the same can then resort to court action to test the sufficiency of such reasons. Statements that the records are "confidential" or that permitting inspection would be "contrary to the public interest" are merely legal conclusions and are not a substitute for the specific reasons which must be given in each case. In testing the sufficiency of a stated specific reason, the trial judge would examine the record or document in camera and would determine "whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection." State ex rel. Youmans, supra, p. 682. Where no specific reason was given for withholding inspection "the writ of mandamus compelling its production should issue as a matter of course." Beckon v. Emery, supra, p. 518.
 2. Any member of the public, regardless of his motives, has a right to inspect any public record, subject to the three limitations stated above. This does not mean that the custodian or court cannot consider the claimed or stated purpose for which *Page 407 
the record is to be used in balancing the interests. See United States v. Richard M. Nixon, infra.
 3. ". . . public policy, and hence the public interest, favors right of inspection of documents and public records. It is in the unusual or exceptional case, where the harm to the interest that would be done by divulging matters of record would be more damaging than the harm that is done to public policy by maintaining secrecy, that the inspection should be denied." Beckon v. Emery, supra, p. 516.
 4. The custodian should make his determination on a case-by-case basis in view of the record involved and the circumstances then and there existing. In Youmans
the court declined to catalog the situations which might justify refusal but stated that sec. 19.21, Stats., will be construed in pari materia with sec. 66.77, Stats., the Wisconsin open meeting law, and that the policy guidelines for holding closed meetings contained in sec. 66.77 (4), Stats., as recreated by ch. 297, Laws of 1973, will be applicable to the question of sufficiency of stated reason for withholding inspection under sec. 19.21, Stats. We will not set forth the detailed provisions of sec. 66.77 (4), Stats., here. A discussion of the (4) (b), (c), (e) exceptions appears in 60 OAG 468, 476-481. A discussion of the (4) (d), (e), (f) exceptions appears in 61 OAG 361, 364. Those discussions will not be restated here other than to note that any damage to reputations to justify withholding must be "undue" damage and that time elapsed, pendency of or probability of criminal prosecution are matters to be considered. The Youmans case did point out that other common law exceptions may justify withholding of access; including documentary evidence in the hands of a district attorney, minutes of a grand jury, evidence in a divorce action sealed by the court and information gathered under a pledge of confidentiality. With respect to pledges of confidentiality, opinions at 60 OAG 284, 289 (1971), 61 OAG 361, 365 (1972), state that the following criteria should be applied:
 ". . . First, there must have been a clear pledge made. Second, the pledge should have been made in order to obtain the *Page 408 
information. Third, the pledge must have been necessary to obtain the information.
 "Finally, even if a pledge of confidentiality fulfills these criteria, thus making the record containing the information obtained clearly within the exception, the custodian must still make an additional determination in each instance that the harm to the public interest that would result from permitting inspection outweighs the great public interest in full inspection of public records. . . ."
Statutory rules of privilege as to production of evidence and the giving of testimony may form the basis in proper case for nondisclosure of records. In many cases the privilege is conditional and may be waived by the person for whose protection the privilege exists. A non-exhaustive listing would include private communications between husband and wife, sec. 885.18, Stats.; confessions to clergymen, sec. 885.20, Stats.; communication by student to dean of institution of higher education or school psychologist, sec. 885.025, Stats.; communications to doctors by patients, sec. 885.21, Stats.; and communications to attorneys, sec. 885.22, Stats. None of these would be directly applicable to the Governor with the exception of the last and that would only apply to documents in custody of his attorney and not to documents officially in his own custody.
Article XIV, sec. 13, Wis. Const., continues such parts of the common law in force in the Territory of Wisconsin not inconsistent with the Constitution as part of the law of this state until altered or suspended by the legislature.
Since Youmans, supra, p. 681, states that common law exceptions may justify withholding of access to public records in certain cases, some discussion of executive privilege is in order. I am not aware of any Wisconsin cases dealing with the subject with the possible exception of State ex rel. Reynolds v. Circuit Court
cited below. It would generally refer to privilege with respect to the required production of evidence or giving of testimony in court proceedings. I am of the opinion that limited executive privilege exists in Wisconsin which would in certain cases justify the withholding of public access to specific public records on the basis of specific reasons stated and *Page 409 
upheld by a court. In my opinion it would apply to the office of Governor as the chief executive office of the state.
Since executive privilege involves some of the concepts applicable to the lawyer's work product rule, reference to the following Wisconsin cases is appropriate.
State ex rel. Reynolds v. Circuit Court (1961), 15 Wis.2d 311,112 N.W.2d 686, 113 N.W.2d 537, involved a state condemnation proceeding. The court stated that the attorney-client privilege was to be narrowly construed and restricted to communications made by the client to the attorney and would not cover transactions had with or communications to third persons. The court referred to the "work product of the lawyer" rule referred to in Hickman v. Taylor (1947), 329 U.S. 495, 67 S.Ct. 385,91 L.Ed. 451, in which the U.S. Supreme Court held that the work product of an attorney, there considered, was outside the attorney-client privilege, but that absent compelling justification, the court should not require production of written statements of witnesses, and the lawyer's memoranda and mental impressions of oral statements of witnesses. However, in Reynolds
the court held that a claim of privilege could be interposed if one of the experts was asked to disclose a communication which he had made to the State Highway Commission or its staff or counsel but that neither the attorney-client privilege nor the "work product of the lawyer" rule would preclude attorneys for the landowner from taking depositions of the expert concerning the "relevant opinions they have formed, and the observations, knowledge, information, and theories on which the opinions are based." p. 321.
Wisconsin has adopted the rationale of Hickman v. Taylor as applied to sec. 269.57, Stats., inspection of documents and sec. 887.12, discovery proceedings. In State ex rel. Dudek v. CircuitCourt (1967), 34 Wis.2d 559, 589, 150 N.W.2d 387, the court stated:
 "From Hickman, as quoted above, we conclude that a lawyer's work product consists of the information he has assembled and the mental impressions, the legal theories and strategies that he has pursued or adopted as derived from interviews, statements, memoranda, correspondence, briefs, legal and factual research, mental impressions, personal beliefs, and other tangible or intangible means. *Page 410 
 "This broad definition of lawyer's work product requires that most materials, information, mental impressions and strategies collected and adopted by a lawyer after retainer in preparation of litigation and relevant to the possible issues be initially classified as work product of the lawyer and not subject to inspection or discovery unless good cause for discovery is shown." (Emphasis added.)
Also see Halldin v. Peterson (1968), 39 Wis.2d 668, 673,159 N.W.2d 738.
In Carl Zeiss Stiftung v. V.E.B. Carl Zeiss (D.C. 1966),40 F.R.D. 318, 324, it was stated:
 "[3] `Executive privilege is a phrase of release from requirements common to private citizens or organizations' — an exemption essential to discharge of highly important executive responsibilities. While it is agreed that the privilege extends to all military and diplomatic secrets, its recognition is not confined to data qualifying as such. Whatever its boundaries as to other types of claims not involving state secrets, it is well established that the privilege obtains with respect to intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.
 "[4] This privilege, as do all evidentiary privileges, effects an adjustment between important but competing interests. There is, on the one hand, the public concern in revelations facilitating the just resolution of legal disputes, and, on the other, occasional but compelling public needs for confidentiality. In striking the balance in favor of nondisclosure of intra-governmental advisory and deliberative communications, the privilege subserves a preponderating policy of frank expression and discussion among those upon whom rests the responsibility for making the determinations that enable government to operate, and thus achieves an objective akin to those attained by other privileges more ancient and commonplace in character. Nowhere is the public interest more vitally involved than in the fidelity of the sovereign's decision — and policy-making resources." *Page 411 
The Carl Zeiss case contains one of the best statements of the rule, its purpose and limitations. It also gathers the U.S. Supreme Court citations which support the privilege includingUnited States v. Morgan (1941), 313 U.S. 409, 422, 61 S.Ct. 999,85 L.Ed. 1429, which holds that it is not the function of the court to probe the mental processes by which the Secretary of Agriculture made his determination to make an order fixing maximum rates for stockyards, and United States v. Reynolds
(1953), 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, which recognized that executive privilege as to military and state secrets has been long established in the law of evidence and that whether the privilege shall lie shall be for the court and cannot be left to the caprice of executive officers. At pp. 7-8 of Reynolds, the court stated:
 ". . . The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect. . . ."
Executive privilege must be asserted on the basis of specific reasons by the chief executive officer or other high official involved who has the burden of establishing the privilege. At least one court has held that the court cannot in every case insist on in camera inspection of the documents involved but that proof can be by other means. The privilege is conditional and not absolute, with the court balancing the competing interests.
In United States v. Gates (D.C. Colo. 1964), 35 F.R.D. 524, the court held that historical files prepared by the Internal Revenue Service reflecting valuation of a company and past tax returns of members of a family sued, even though in the hands of government attorneys, were not within attorney-client privilege and did not constitute government attorneys' work product and that they were not protected from discovery by executive privilege since there was no claim that military, diplomatic or other high policy secrets were involved and that even if there were, executive privilege was waived *Page 412 
where the government as plaintiff maintains an action in which the documents in question would be discoverable in the absence of purported executive privilege.
In Wood v. Breier (E.D. Wis. 1972), 54 F.R.D. 7, it was held that under the federal statute discovery may be proper notwithstanding a claim for executive privilege when the basis of the suit arises from alleged misconduct or perversion of power by a governmental official involving federal, state or local government. The court gave the following guidelines. The government should not lightly invoke claim of executive privilege when it fears discovery of its confidential information will impair its ability to function as it is the duty of the court to make independent determination of whether a privilege does exist. Such determination cannot be made in the abstract but must be done on a case-by-case ad hoc basis by balancing the applicable public policies and the material sought to be discovered in each individual case. Where law enforcement investigations are involved, discovery is often refused where there is an on-going investigation but once the investigation and prosecution have been completed, discovery should be permitted. In other situations, the investigation may have long since been completed and no prosecution contemplated. The privilege has been generally recognized for "intra- and inter-agency advisory opinions submitted for consideration in the performance of decision and policy-making functions" and is conditional and will not prohibit discovery where there is need for discovery to preclude prejudice and unfairness. Such conditional privilege does not apply to factual reports and summaries. In some cases, the informer's privilege, the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of the law, may be applicable. Such privilege, however, is limited to voluntary civilian cooperation with law enforcement agencies.
In United States v. Richard M. Nixon, President (July 24, 1974), 418 U.S. 683, 42 LW 5237, the U.S. Supreme Court held that "it is `emphatically the province and the duty' of this court `to say what the law is' with respect to the claim of privilege presented . . ." and that "neither the doctrine of separation of powers, nor the need for confidentiality of high level communications, without more, can sustain an absolute, unqualified presidential privilege from immunity from judicial process under all circumstances. The President's need *Page 413 
for complete candor and objectivity from advisers calls for great deference from the courts. However, when the privilege depends solely on the broad, undifferentiated claim of public interest in the confidentiality of such conversations, a confrontation with other values arises. Absent a claim of need to protect military, diplomatic or sensitive national security secrets, we find it difficult to accept the argument that even the very important interest in confidentiality of presidential communications is significantly diminished by production of such material for incamera inspection with all the protection that a district court will be obliged to provide." The court ordered the production of the records sought by subpoena which were essential to enforcement of criminal statutes for in camera inspection.
You inquire whether disclosure may be withheld or limited solely on the ground that full disclosure would create an undue administrative burden.
I am of the opinion that it cannot be absolutely withheld and that it can be limited only by means of express statute, reasonable regulations with respect to hours and procedures to limit unreasonable interference with the ordinary operations of the office, and by denial for express stated reasons subject to limitations of the Youmans and Beckon v. Emery cases cited above.
You inquire whether the exercise of executive discretion is subject to review and if so in what forum and by what standards.
Limited executive privilege must be recognized as being beyond review as is the executive's exercise of discretion generally. See State ex rel. Warren v. Nusbaum (1973), 59 Wis.2d 391, 450,108 N.W.2d 780. Nevertheless, the courts may determine whether the executive has overstepped the permissible area in which he may properly exercise unreviewable discretion. See State ex rel.Mueller v. Thompson (1912), 149 Wis. 488, 491, 137 N.W. 20. Similarly, the courts may determine whether the claim to executive privilege is lawfully asserted. United States v. Nixon
(1974), 42 L.W. 5237. A mandamus action brought in the Dane County Circuit Court will vest the courts with power to make these determinations. See sec. 261.01 (9), Stats.
I conclude, then, that while the exercise of executive discretion or executive privilege is not subject to judicial review, whether it is *Page 414 
properly claimed or asserted is judicially determinable and the courts would apply the standards described herein.
RWW:RJV