DALE CATTANACH, Secretary, Department of Transportation
Your predecessor requested my opinion concerning the applicability of the Wisconsin public records statute, sec.19.21, Stats., to certain records received and maintained by the Division of Motor Vehicles. He stated that under ch. 218, applicants for motor vehicle dealers' licenses and applicants for motor vehicle salvage dealer licenses must submit certain financial information to the Division. Your question is whether such financial information is confidential and therefore not subject to inspection and copying by the general public.
In my opinion, such statements are public records, are not automatically confidential and are available for public inspection and copying subject to the limitations contained inState ex rel. Youmans v. Owens, 28 Wis.2d 672, 137 N.W.2d 470
(1965), 139 N.W.2d 241 (1966), and Beckon v. Emery, 36 Wis.2d 510,153 N.W.2d 501 (1967).
Section 16.61 (2)(a), Stats., defines public records of a state agency as:
 "(a) `Public records' means all books, papers, maps, photographs, films, recordings, or other documentary materials or any copy thereof, regardless of physical form or characteristics, made, or received by any agency of the state or its officers or employes in connection with the transaction of public business and retained by that agency or its successor as evidence of its activities or functions because of the information *Page 303 
contained therein; except the records and correspondence of any member of the state legislature."
Section 19.21 (1) and (2), Stats., provides:
 "(1) Each and every officer of the state . . . is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.
 "(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1). Any person may, at his own expense and under such reasonable regulations as the custodian prescribes, copy or duplicate any materials, including but not limited to blueprints, slides, photographs and drawings. Duplication of university expansion materials may be performed away from the office of the custodian if necessary." (Emphasis added.)
The financial statements involved are required by law to be filed with the division, so they qualify as "property or things" under this statute. I am unaware of any statute or constitutional provision which would make the financial statements confidential or absolutely privileged and which therefore would exclude them from the disclosure requirement of sec. 19.21 (2). In the absence of statutory or constitutional exception, the disclosure requirements of sec. 19.21 (2) apply.
This does not mean, however, that the financial statements are subject to automatic disclosure. In a 1974 opinion from this office, we commented at length on the criteria for permitting or denying public access to records. That opinion, 63 Op. Att'y Gen. 400, 405-406 (1974), contains the following summary:
 "The leading Wisconsin cases governing the right to public access are State ex rel. Youmans v. Owens
(1965), 28 Wis.2d 672, 137 N.W.2d 470 and Beckon v. Emery (1967), 36 Wis.2d 510, 153 N.W.2d 501. *Page 304 
 "These cases essentially hold, as elaborated in 58 OAG 67 (1969), 60 OAG 9 (1971), 60 OAG 43 (1971), 60 OAG 284 (1971), 60 OAG 470 (1971), 61 OAG 12 (1972), 61 OAG 361 (1972), that:
 "1. The public right to full access to all public records provided for in sec. 19.21 (2), Stats., is qualified in the following respects:
 "a. The right to inspect is subject to such reasonable regulations with respect to hours, procedure, etc., that the custodian may prescribe to limit unreasonable interference with the ordinary operations of his office
 "b. The right may be limited or denied by express statutory provision.
 "c. The custodian may and has a duty to deny inspection where he determines that permitting inspection would result in harm to the public interest which outweighs any benefit that would result from granting inspection. Specific reasons must be given when inspection is withheld and the person seeking the same can then resort to court action to test the sufficiency of such reasons. Statements that the records are `confidential' or that permitting inspection would be `contrary to the public interest' are merely legal conclusions and are not a substitute for the specific reasons which must be given in each case. In testing the sufficiency of a stated specific reason, the trial judge would examine the record or document in camera and would determine `whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection.' State ex rel. Youmans. supra, p. 682. Where no specific reason was given for withholding inspection `the writ of mandamus compelling its production should issue as a matter of course.' Beckon v. Emery, supra, p. 518.
 "2. Any member of the public, regardless of his motives, has a right to inspect any public record, subject *Page 305 
to the three limitations stated above. This does not mean that the custodian or court cannot consider the claimed or stated purpose for which the record is to be used in balancing the interests. See United States v. Richard M. Nixon [418 U.S. 683 (1974)].
 "3. `. . . public policy, and hence the public interest, favors the right of inspection of documents and public records. It is only in the unusual or exceptional case, where the harm to the public interest that would be done by divulging matters of record would be more damaging than the harm that is done to public policy by maintaining secrecy, that the inspection should be denied.' Beckon v. Emery, supra, p. 516.
 "4. The custodian should make his determination on a case-by-case basis in view of the record involved and the circumstances then and there existing. In Youmans
the court declined to catalog the situations which might justify refusal but stated that sec. 19.21, Stats., will be construed in pari materia with sec. 66.77, Stats., the Wisconsin open meeting law, and that the policy guidelines for holding closed meetings contained in sec. 66.77 (4), Stats., as recreated by ch. 297, Laws of 1973, will be applicable to the question of sufficiency of stated reason for withholding inspection under sec. 19.21, Stats. We will not set forth the detailed provisions of see. 66.77 (4), Stats., here. . . . The Youmans case did point out that other common law exceptions may justify withholding of access; including documentary evidence in the hands of a district attorney, minutes of a grand jury, evidence in a divorce action sealed by the court and information gathered under a pledge of confidentiality. . . ."
In State ex rel. Joan Dalton v. Mundy, Director of Institutionsand Depts. of Milw. Co., et al., 80 Wis.2d 190, 257 N.W.2d 877
(October 4, 1977), the court reaffirmed its holding in Beckon
that the public interest favors the right of inspection of documents and public records.
The Youmans case makes the exceptions under the open meeting law (now revised and renumbered subch. IV of ch. 19 by ch. 426, Laws of 1975) relevant in determining whether, in individual cases. *Page 306 
to disclose public records. The determination must be case-by-case; so although an exception under the open meeting law may justify a particular withholding, it cannot be used as the basis for a blanket rule prohibiting the disclosure of certain documents. In each case, the custodian must determine whether the harm to the public interest outweighs any benefit that would result from granting inspection, while keeping in mind that public policy favors inspection.
In my opinion neither the exemption set forth in sec. 19.85 (1) (b), Stats., permitting a closed session where licensing is involved, nor the exemption in sec. 19.85 (1)(f), Stats., permitting a closed session when "Considering financial, medical, social or personal histories . . . which, if discussed in public, would be likely to have a substantial adverse effect upon thereputation of any person referred to" (emphasis added), would justify refusal to permit examination and copying of the records involved, except in a most unusual case. See 60 Op. Att'y Gen. 470, 479 (1971), as to exemption in sec. 19.85 (1) (f).
With respect to motor vehicle dealers, sec. 218.01 (2)(b), Stats., provides in part that:
 ". . . The licensor may require in such application, or otherwise, information relating to the applicant's solvency, his financial standing or other pertinent matter commensurate with the safeguarding of the public interest in the locality in which said applicant proposes to engage in business, all of which may be considered by said licensor in determining the fitness of said applicant to engage in business as set forth in this section."
With respect to motor vehicle salvage dealers, sec. 218.21 (1), Stats., contains language similar to that in sec. 218.01 (2)(b), Stats., above, and in addition, sec. 218.21 (4), Stats., provides:
 "Every application shall be accompanied by a current financial statement to determine the applicant's solvency as required under sub. (1)."
The Department may require a bond when there is reasonable doubt as to the financial ability of the licensee. Secs. 218.01 (2)(h) and 218.21 (6), Stats. Section 218.22 (1), Stats., provides that the licensor shall only issue a motor vehicle salvage dealer's license when it is "satisfied that the applicant is financially solvent and of good character." Among numerous grounds for denial, suspension or revocation of either type of license are: "Proof of unfitness" and *Page 307 
"Material misstatement in application for license." See secs. 218.01 (3) and 218.22 (3), Stats.
The filing of the financial data and information as to solvency is for the purpose of "safeguarding of the public interest." The licensor and licensee are not parties which have exclusive interest in access to such public records. Members of the public who have done or contemplated doing business with the applicant have an interest. Other members of the public, including competitors of the applicant, may well be in a position to alert the licensor to material misstatements in the information filed. Under sec. 19.21 (2), Stats., no showing of interest is required as a prerequisite to inspection. See 63 Op. Att'y Gen. 400, 406 (1974).
The exemption in the open meeting statute permitting closed sessions where open discussion of financial data "would be likely to have a substantial adverse effect upon the reputation of any person referred to" is not designed as a protection from competition. The somewhat similar provision in former sec. 14.90
(3)(e), Stats. (1965), used the phrase "which may unduly damage reputations." In State ex rel. Youmans, supra, p. 685, the court placed great emphasis on the word "unduly" and held that as applied to public records, it did not bar all inspection of public records which might in some degree damage reputations. Under present secs. 19.21 (2) and 19.85 (1)(f), Stats., denial of inspection would not be justified in every case where disclosure might have an adverse effect upon the reputation of the person, but is proper only where inspection of the financial data "wouldbe likely to have a substantial adverse effect upon thereputation of any person referred to." (Emphasis added.)
Since the financial statements are required by law as a condition for issuance of the licenses, the Department cannot pledge to keep the information confidential.
BCL:RJV *Page 308