FRED A. RISSER, Chairman Committee on Senate Organization
On behalf of the Committee on Senate Organization, you have requested my opinion with respect to whether certain plans and related documents filed with the Department of Industry, Labor and Human Relations (DILHR) are available to the public within the scope of sec. 19.21, Stats. Correspondence attached to your request indicates that there is a concern whether certain building plans and specifications, including those prepared by architects, submitted to DILHR for approval should be considered confidential as trade or manufacturing secrets so as not to be available to possible business competitors.
The documents under consideration are "essential drawings, calculations and specifications for public buildings, public structures and places of employment" required by sec. 101.12, Stats. Plans for public buildings, public structures and places of employment must be approved by DILHR before construction is started.
Section 16.61 (2)(a), Stats., defines public records of a state agency as:
 "'Public records' means all books, papers, maps, photographs, films, recordings, or other documentary materials or any copy thereof, regardless of physical form or characteristics, made, or received by any agency of the state or its officers or employes in connection with the transaction of public business and retained by that agency or its successor as evidence of its activities or functions because of the information contained therein; except the records and correspondence of any member of the state legislature."
Section 19.21 (1) and (2), Stats., provides:
 "(1) Each and every officer of the state . . . is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his *Page 216 
deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.
 "(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1). Any person may, at his own expense and under such reasonable regulations as the custodian prescribes, copy or duplicate any materials, including but not limited to blueprints, slides, photographs and drawings. Duplication of university expansion materials may be performed away from the office of the custodian if necessary."
The plans and specifications involved are required by law to be filed with DILHR, so they qualify as "property or things" under this statute. I am unaware of any statute or constitutional provision which would make these plans and specifications confidential or privileged and which would therefore exclude them from the disclosure requirement of sec. 19.21 (2). In the absence of statutory or constitutional exception, the disclosure requirements of sec. 19.21 (2) apply. See 63 Op. Att'y Gen. 400, 405-406 (1974), for a discussion and summary of criteria for permitting or denying public access to records.
In some states, architects' plans are protected by common-law copyright as a property interest, at least until publication. In a somewhat analogous area the Wisconsin Supreme Court has recognized a common-law cause of action in unfair competition involving pirated tape recordings. Mercury Record v. EconomicConsultants, 64 Wis.2d 163, 183, 187, 218 N.W.2d 705 (1974).
Even if the Wisconsin court were to later recognize that architects have a similar common-law right or cause of action with respect to their drawings and specifications, it is my opinion that this would not necessarily bestow any blanket confidential status to such plans or specifications filed with a state agency such as DILHR under the statutes mentioned above. Whether or not the filing requirement serves the limited purpose of assuring safety in construction and therefore is not a publication or waiver of trade secrets or other similar legal rights, see 18 Am. Jur. 2d Copyright and Literary Property sec. 79, p. 369, the right to inspect and copy does not itself *Page 217 
imply the right to use the material for unfair competition or other similarly actionable purposes. See Mercury Record v.Economic Consultants, 64 Wis.2d 163, 175, 218 N.W.2d 705 (1974).
Therefore, it is my opinion that since the filing of the plans and specifications in question is required by law in order to obtain DILHR's approval to construct a public building, they are public records and in most cases subject to inspection and copying under such reasonable regulations as the custodian prescribes. It is difficult to conceive of circumstances where the kinds of plans which are required to be submitted for approval here would be of such a nature as to support a claim that they contained trade secrets. See sec. 905.08, Stats., and 63 Op. Att'y Gen. at p. 408. Nevertheless, in the unusual circumstance where such a claim is made or when it appears to the custodian that such a claim could plausibly be maintained, this would be a factor that the custodian should take into account in performing the so-called balancing of interests test and making a determination whether "permitting inspection would result in harm to the public interest which outweighs any benefit that would result from granting inspection." 63 Op. Att'y Gen. at p. 406. As the Wisconsin Supreme Court said in Beckon v. Emery, 36 Wis.2d 510,516, 153 N.W.2d 501 (1967):
 ". . . It is only in the unusual or exceptional case, where the harm to the public interest that would be done by divulging matters of record would be more damaging than the harm that is done to public policy by maintaining secrecy, that the inspection should be denied. . . ."
Thus, even a decision not to disclose must be limited only to that portion of the plans and related documents which would disclose the trade secret.
In view of the likelihood that the application of some of the general principles stated above, particularly with respect to trade secrets, may result in the custodian being obliged to make such determinations on a case-by-case basis without legislative guidance, I respectfully suggest that this may be a matter where public policy should be expressed by legislative enactment.
BCL:JEA *Page 218