Peter D. FOX, Plaintiff-Appellant,

v.

William F. BOCK, Racine County Corporation Counsel, Defendant-Respondent.†

Supreme Court

*No. 87–1853. Argued March 28, 1989.—Decided April 27, 1989.*

(Also reported in 438 N.W.2d 589.)

† Motion for reconsideration denied, with $50 costs, on June 20, 1989.

For the plaintiff-appellant there were briefs (in court of appeals) by *Constantine, Christensen, Krohn & Kerscher, S.C.,* Racine, and oral argument by *Charles H. Constantine.*

For the defendant-respondent there were briefs (in court of appeals) by *Kenneth F. Hostak, Emily S. Mueller,* and *Thompson & Coates, Ltd.,* Racine, and oral argument by *Mr. Hostak.*

Amicus curiae briefs (in court of appeals) were filed by *Linda M. Clifford* and *LaFollette & Sinykin,* Madison, for Wisconsin Freedom of Information Council and the Racine Journal Times; and by *John K. O'Connell,* Madison, for Wisconsin Counties Association.

STEINMETZ, J. This appeal was certified to this court under the provisions of sec. 809.61, Stats. We accepted certification.

The issue in this case is whether a study conducted by the Institute for Liability Management, which was commissioned by and prepared for the Racine County Corporation Counsel's office, is a record as that term is defined in sec. 19.32(2), Stats.[1] The trial court found it was not a record. We hold it was a record.

William F. Bock has been the Racine County Corporation Counsel since 1976. The Deputy Corporation Counsel was Susan Torok. In late 1985 and early 1986, Bock became concerned about the increasing number of civil claims which were being brought against Racine county and ordered a study of the problem. His concerns stemmed in part from the fact that Racine county was self-insured. After making his concerns known to Leonard Ziolkowski, then the Racine County Executive, sufficient funds were set aside in the Racine county budget for the 1986 fiscal year to

[1]Sec. 19.32(2), Stats., provides as follows:

(2) 'Record' means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. 'Record' includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), and computer printouts. 'Record' does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials which are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent or bequest; and published materials in the possession of an authority other than a public library which are available for sale, or which are available for inspection at a public library.

allow Bock to hire a consultant to conduct a risk management study of certain Racine county departments.

The corporation counsel contacted various consulting firms requesting bids to conduct the study. Early in 1986 a contract was entered into with the Institute for Liability Management of Vienna, Virginia (the Institute) to conduct a study at a cost to Racine county of $24,000. Prior to the study being prepared by the Institute and prior to the Institute making a proposal, members of the corporation counsel's office had conversations with representatives of the Institute about the Wisconsin Public Records Law and discussed their concerns about possible public access to any report prepared by the Institute.

Members of the Institute came to Racine county to gather information in early 1987. Members of the Racine County Sheriff's Department, Personnel Department, Corporation Counsel's office and District Attorney's office were interviewed. The study was completed in March or April of 1987. In June of 1987 the corporation counsel received two written copies of the study. The word "draft" was stamped on each written page of the study. Although copies of the study were not released by the corporation counsel, at least two members of the sheriff's department were allowed to review the entire document in the corporation counsel's offices. Other members of the sheriff's command staff reviewed portions of the document dealing with their respective areas of responsibility.

In addition to preparing the written report, the Institute also sent a representative to Racine county to conduct briefing and training seminars primarily for members of the sheriff's department. Two separate seminars were given to county personnel. One was a

general educational seminar, and the other was a briefing seminar dealing with specific aspects of the report and was directed specifically to members of the sheriff's department command staff. The study and seminars included recommendations regarding changes in certain policies and procedures of the county and the sheriff's department.

The Institute's representative spent four days in Racine conducting these seminars and meeting with various Racine county employees. On the first day of his visit, the deputy corporation counsel, Torok, told the representative certain changes had to be made in the report. The corrections included typographical errors, an obvious error in the report dealing with the absence of an exercise area in the jail facility and certain other errors, the nature of which have not been disclosed.

At the same time that the Institute's representative was informed that certain changes had to be made, he was also informed that the existence of the study had "leaked out," and that someone had asked Dennis Kornwolf, then County Executive of Racine, for a copy of the report. The representative responded that he would take the two copies of the report back to Washington, and he would wait to hear from the corporation counsel before taking any action. The Institute still has the two copies of the report and, to the best of knowledge of Bock and Torok, has taken no steps to make any changes in the form or content of the report since the copies were returned to the Institute by the corporation counsel.

Bock testified he had no intention of requesting the study from the Institute unless he could be assured that the report, in whatever form it took, would not be subject to inspection by the public.

After the report had been returned to the Institute, the Racine county sheriff's department began implementing certain changes in procedures and policies pursuant to suggestions contained in the report and discussions during the in-service seminars conducted by the Institute's representative. The corporation counsel assisted briefly in implementing certain of these changes. Torok expressed satisfaction with the performance of the Institute and the $24,000 has been paid in full to the Institute for the study and seminars.

On July 8, 1987, Peter D. Fox, editor of the Journal Times, a Racine county newspaper, served a written request on Bock for a copy of the study prepared by the Institute. In a letter dated July 9, 1987, Bock denied Fox's request stating various reasons for the denial. For purposes of this appeal it is sufficient to reiterate two of the reasons for the denial of the request: Bock did not have the report in his possession, and further, in his opinion, the report was not a "record" as that term is defined in sec. 19.32, Stats.

Pursuant to sec. 19.37(1), Stats., Fox then filed and served upon Bock a petition for writ of mandamus. Later Fox served upon Bock a motion and notice of motion to produce the Institute's study. One of the affirmative defenses in the return to the petition for writ of mandamus was that the Institute's study was prepared in draft form and did not constitute a record under sec. 19.32(2).

A hearing on the petition filed by Fox was held before the Honorable Stephen A. Simanek, Racine county circuit court judge. The court, after hearing the testimony of Bock and Torok and hearing arguments of counsel, held that the document requested from the corporation counsel was a "draft" and not a "record" under sec. 19.32(2), Stats., and therefore, not subject to

inspection by Fox. Fox appealed that ruling to the court of appeals.

■

Whether a statute applies to a given set of facts presents a question of law. Such questions are decided independent of and without deference to the trial court's decision. *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis. 2d 408, 280 N.W.2d 142 (1979).

Policy underlying the public records law is set forth in sec. 19.31, Stats.:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

To that end, sec. 19.35(1)(a) provides:

> **Access to records; fees. (1)** Right to inspection. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement

of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

The trial court dismissed the petition after concluding that this document was only a draft and therefore not subject to disclosure. The trial court's ruling on this threshold question made it unnecessary for it to apply the remaining portion of sec. 19.35(1), Stats., which may restrict public access. We only discuss the threshold question of whether this document was a "draft" or a "record" and direct the trial court to apply the latter portion of sec. 19.35(1)(a) on remand. *See, e.g., Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 279 N.W.2d 179 (1979); *Beckon v. Emery,* 36 Wis. 2d 510, 516–19, 153 N.W.2d 501 (1967). *State ex rel. Youmans v. Owens,* 32 Wis. 2d 11, 144 N.W.2d 793 (1966); *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 681–82, 139 N.W.2d 241, 137 N.W.2d 470 (1965).

The term "record" is broadly defined in sec. 19.32(2), Stats., as "any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority." Section 19.32(2) further states that the term "'record' does not include drafts, notes, preliminary computations and like materials, prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working ...."

Any exceptions to the general rule of disclosure must be narrowly construed. *Hathaway v. Green Bay School Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984). In *Hathaway* we stated:

> Section 19.21, Stats., in light of prior cases, must be broadly construed to favor disclosure. Exceptions should be recognized for what they are, instances in derogation of the general legislative intent, and should, therefore, be narrowly construed; and unless the exception is explicit and unequivocal, it will not be held to be an exception. It would be contrary to general well established principles of freedom-of-information statutes to hold that, by implication only, any type of record can be held from public inspection.

In *International Union v. Gooding,* 251 Wis. 362, 371–72, 29 N.W.2d 730 (1947), this court analyzed sec. 18.01(1), Stats., predecessor to sec. 19.21. The issue before the court was whether a petition filed with the Wisconsin Employment Relations Board was subject to inspection. In determining whether this document was subject to disclosure, the court stated:

> It is the rule independently of statute that public records include not only papers specifically required to be kept by a public officer but all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate, or customary method of discharging the duties of the office. ...
> In the case at bar the petition was received and given a file number. *It aroused official action of the board resulting in a formal written opinion* which was also filed. This appears to us to indicate that it is a public record or at least that it is a paper in the

hands of a public official as such officer. While the petition itself is not a memorial by the officer, it is in a sense a part of a docket which includes the memorial of an officer and for the foregoing reasons must be considered to be included in the description of papers affected by sec. 18.01(1), Stats. We think this might be true even if the commission could originally have consigned the paper to the waste-basket or have returned it to its sender, without taking formal action .... (Emphasis added.)

The court went on to hold that the document was within the provisions of sec. 18.01(1). *Id.* at 372.

In *Youmans,* 28 Wis. 2d at 679–80, the court cited *Gooding* with approval. In *Youmans* the Waukesha Freeman demanded access to material submitted to the mayor by the city attorney of Waukesha after the city attorney conducted an investigation of alleged misconduct on the part of members of the Waukesha Police Department. This court deemed it unimportant that the mayor never received a final or formal report from the city attorney. The court stated:

Defendant mayor as 'head of the ... police departments' is entitled to a report of any investigation of the police department made by the city attorney. We deem it wholly immaterial, on the issue of whether defendant was in legal custody of the papers sought to be inspected, that here the city attorney did not submit a formal report stating the conclusions he had reached as a result of his investigation, but instead merely filed with the mayor the statements of persons interviewed and interdepartmental memoranda. (Footnote omitted.)

Whether the document is in "preliminary" form and therefore not in final form is not determinative of whether it is a record. The trial court erred when it

found that the Institute's study was a draft unless and until the final corrections were made on it.

If the trial court's rulings were correct, legal custodians of public records could circumvent the effect of ch. 19, Stats., by merely claiming that the report is not in final form and further changes must be made in it. In this case, on cross-examination, corporation counsel was asked: "And the truth of the matter is you have no intent to ever request that report with the corrections." He answered: "If there's any possibility that that report would be made public and available to the public, then I don't want the report." Later when asked if the Institute had fulfilled its obligation to the county he stated:

> Well, if—if I keep a written report from being divulged to other people, then I want one of those, and I would probably request it. If that is not possible, then I guess in my opinion they have completed their work because we'll have to operate from what we can remember was in the report.

Public policy set forth in sec. 19.31, Stats., favoring public disclosure does not allow a custodian of a record to delay or cancel delivery of the "final" report in an attempt to have it qualified as a "draft." The study was not a "draft" for purposes of the statute. The Institute's study was delivered, approved by Bock and Torok and paid for by the county. It was reviewed by not only the corporation counsel but members of the sheriff's department command staff, and a seminar was given on the report. Changes in practices and procedures in the sheriff's department demonstrate that recommendations of the study have been implemented.

A determination that a document is a draft prepared for the originator's personal use creates an

exception to the general rule of disclosure. It is a draft if it is prepared for and utilized for the originator's personal use. The Institute's study was not created for the personal use of the corporation counsel nor was it so utilized. Under sec. 19.32(2), Stats., a document prepared for something other than the originator's personal use, whether it is in preliminary form or stamped "draft," whether recommendations of the document are implemented or not, is by definition a record.

The trial court held that the corporation counsel was the originator of the study document. The Institute was not the originator because the study was not prepared for its personal use. If the corporation counsel's office was the originator, it was not the only office utilizing the study. Members of the sheriff's department and their command staff were not only allowed to review the study, but also were required to review the study and attend a seminar regarding it. Based upon recommendations in the study, policy and procedural changes within the sheriff's department are being implemented. It was used for other than personal use of the corporation counsel or the Institute. Regardless of who was the originator of this document, it does not conform with the exclusionary language of sec. 19.32(2), Stats., and therefore it was a record.

The corporation counsel refused inspection of the document based on the statutory exemption set forth in sec. 19.32(2), Stats. Such denial of inspection is contrary to public policy and the public interest. Upon a demand to inspect a record, "it is incumbent upon [the custodian of the record] to refuse the demand for inspection and state specifically the reasons for this refusal" when the custodian determines that the harmful effect of permitting inspection outweighs the benefit

to be gained by allowing inspection. *Youmans,* 28 Wis. 2d at 682. In *Newspapers,* 89 Wis. 2d at 426–27, the court stated:

> Nevertheless, we have concluded, where common-law limitations on the right to examine records and papers have not been limited by express court decision or by statute, that presumptively public records and documents must be open for inspection. We stated in *Youmans,* relying on sec. 19.21(1) and (2), Stats.:
>
> '... that public policy favors the right of inspection of public records and documents, and it is only in the exceptional case that inspection should be denied.' (at 683)
>
> In *Beckon v. Emery,* 36 Wis. 2d 510, 516, 153 N.W.2d 501 (1967), we stated that the "public policy, and hence the public interest, favors the right of inspection of documents and public records." *See, also State ex rel. Dalton v. Mundy,* 80 Wis. 2d 190, 196, 257 N.W.2d 877 (1977). These cases restate the legislative presumption that, where a public record is involved, the denial of inspection is contrary to the public policy and the public interest.

In *Beckon,* 36 Wis. 2d at 518, we stated:

> We pointed out in *Youmans* that if an action were brought to compel the production of documents the officer could then, if he wished, stand upon the reasons given, and the documents could be examined by the court *in camera* to determine whether in light of the reasons specified the inspection of the documents would cause harm to the public interest that would outweigh the presumptive benefit to be derived from granting inspection.

We further stated in *Newspapers,* 89 Wis. 2d at 427:

To implement this presumption, our opinions have set out procedures and legal standards for determining whether inspection of records is mandated by the statute. In the first instance, when a demand to inspect public records is made, the custodian of the records must weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection. *Beckon v. Emery, supra* at 516; *Youmans, supra* at 682. If the custodian decides not to allow inspection, he must state specific public-policy reasons for the refusal. These reasons provide a basis for review in the event of court action. *Beckon, supra* at 518; *Youmans, supra* at 682. The custodian of the records must satisfy the court that the public-policy presumption in favor of disclosure is outweighed by even more important public-policy considerations.

Whether harm to the public interest from inspection outweighs the public interest in inspection is a question of law. The duty of the custodian is to specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are sufficient. It is not the trial court's or this court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the custodian. If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue. *Beckon, supra* at 518, states, '[T]here is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary.' (Emphasis supplied.)

416

Upon a demand for inspection, the custodian of the document bears the burden of proof of facts demonstrating that it is a draft. The decision that a document is a draft under sec. 19.32(2), Stats., is a legal conclusion. However, if there exists a factual dispute, the custodian has the burden of producing evidence and persuading the finder of fact that the proffered facts are true. *Hochgurtel v. San Felippo,* 78 Wis. 2d 70, 86-87, 253 N.W.2d 526 (1977). The custodian must satisfy the finder of fact by the greater weight of the credible evidence that the document is a draft.

Merely labeling each page of the document "draft" does not make the document a draft as that term is defined in sec. 19.32(2), Stats. Similarly, corporation counsel cannot keep the document classified as a draft by not having the final corrections made on it. It was not prepared for the personal use of the corporation counsel. It was a report completed, paid for and relied upon by the county and therefore it does not comport with the exclusions set forth in the public access statute.

The decision of the trial court is reversed and the case is remanded for the application of *Beckon* and *Newspapers.*

*By the Court.*—The judgment of the Racine county circuit court is reversed and cause remanded for further proceedings consistent with this opinion.

ABRAHAMSON, J., took no part.