# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1152 |
| COMPLETE TITLE: | Voces De La Frontera, Inc. and Christine Neuman Ortiz, <br>         Petitioners-Respondents, <br>    v. <br> David A. Clarke, Jr., <br>         Respondent-Petitioner-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | February 24, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 3, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | David L. Borowski |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | BRADLEY, A. W., J. dissents, joined by ABRAHAMSON, J. dissent. |
|   NOT PARTICIPATING: | ZIEGLER, A., J. did not participate. |

ATTORNEYS:

For the respondent-petitioner-appellant-petitioner, there was a brief by *Oyvind Wistrom*, *Lindner & Marsack, S.C.*, Milwaukee, and oral argument by Oyvind Wistrom

For the petitioners-respondents, there was a brief by *Peter G. Earle*, and *Law Office of Peter Earle, LLC.*, Milwaukee, and oral argument by Peter G. Earle

**2017 WI 16**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1152

(L.C. No. 2015CV2800)

STATE OF WISCONSIN         :      IN SUPREME COURT

**Voces De La Frontera, Inc. and Christine Neuman Ortiz,**

        **Petitioners-Respondents,**

  **v.**

**David A. Clarke, Jr.,**

        **Respondent-Petitioner-Appellant-Petitioner.**

**FILED**

**FEB 24, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed*; writ of mandamus is quashed.

¶1 PATIENCE DRAKE ROGGENSACK, C.J. We review a decision of the court of appeals[1] affirming an order of the circuit court[2] that granted mandamus requiring Milwaukee County Sheriff David A. Clarke, Jr. (Sheriff) to provide unredacted versions of

---

[1] Voces de La Frontera, Inc. v. Clarke, 2016 WI App 39, 369 Wis. 2d 103, 880 N.W.2d 417.

[2] The Honorable David L. Borowski of Milwaukee County presided.

immigration detainer forms (I-247 forms) to Voces de la Frontera (Voces) pursuant to its public records request.  The I-247 forms were sent to the Sheriff's office by the United States Immigrations and Customs Enforcement (ICE) and contain immigration-related information about certain individuals held at the Milwaukee County Jail.

¶2   Our review requires us to determine whether the I-247 forms are exempt from disclosure under Wisconsin public records law.  Specifically, we decide whether there is a statutory or common-law exemption to the public records law such that the forms are exempt from disclosure.  And, if there were no such exemption, we would decide whether the public interest weighs in favor of releasing or withholding the documents.

¶3   We conclude that I-247 forms are statutorily exempt from disclosure according to the terms of Wisconsin public records law, and therefore, we need not reach common-law exemptions or the public interest balancing test.  Stated more fully, under Wis. Stat. §§ 19.36(1)-(2),[3] any record specifically exempted from disclosure pursuant to federal law also is exempt from disclosure under Wisconsin law.  Federal regulation 8 C.F.R. § 236.6 (2013) precludes release of any information pertaining to individuals detained in a state or local facility and I-247 forms contain only such information.  Consequently, read together, Wis. Stat. §§ 19.36(1)-(2) and 8 C.F.R. § 236.6

---

[3] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

exempt I-247 forms from release under Wisconsin public records law. Furthermore, because I-247 forms are statutorily exempt from release, the public interest balancing test has no application here.

¶4 Accordingly, we reverse the court of appeals.

## I. BACKGROUND

¶5 On February 5, 2015, Voces submitted a public records request to the Sheriff. Voces requested copies of all I-247 forms[4] that the Sheriff received from ICE since November 2014. The custodian, Captain Catherine Trimboli, responded to Voces, but indicated that she was unable to immediately provide the requested forms. She explained that she needed to speak with ICE.[5]

---

[4] I-247 forms are requests by the federal government to a state or local entity to hold an individual for a period of time not to exceed forty-eight hours after the individual is released from state custody.

[5] Captain Trimboli did not cite 8 C.F.R. § 236.6 as a reason for non-disclosure of the forms. However, it is sufficient that Captain Trimboli recognized that I-247 forms may contain sensitive information and accordingly took measures to ensure that such information was not improperly released. We cannot expect a records custodian to have expertise in federal immigration law sufficient to determine the effect of federal law on release of I-247 forms. For this reason, a record custodian's failure to cite a statutory exemption to the public records law is of no consequence to our analysis. Journal Times v. Racine Bd. of Police & Fire Com'rs, 2015 WI 56, ¶¶74-75, 362 Wis. 2d 577, 866 N.W.2d 563 (reasoning, this "court's de novo determination whether certain information is statutorily exempted from disclosure is not aided by anything a custodian might say in a denial letter, nor is it deterred by the custodian's silence." (internal quotations omitted)). See also State ex rel. Blum v. Bd. of Educ., Sch. Dist. of Johnson Creek,

(continued)

3

¶6 Voces filed a petition for a writ of mandamus seeking to compel the Sheriff to produce the I-247 forms. Prior to ruling on the mandamus, as a compromise, the circuit court ordered the Sheriff to produce redacted copies of all I-247 forms. Accordingly, the Sheriff produced twelve I-247 forms, but redacted the following information: (1) subject ID; (2) event number; (3) file number; (4) nationality; and (5) a series of boxes pertaining to immigration status. On April 7, 2015, the Sheriff provided forms with the detainee's nationality no longer redacted.

¶7 On June 3, 2015, the circuit court granted Voces' writ of mandamus and ordered the Sheriff to produce all I-247 forms, unredacted. Conducting a balancing test, the court weighed Voces' strong interest in examining I-247 forms against the Sheriff's interest in protecting the information contained within the forms.[6] The circuit court concluded that the balancing test weighed in favor of disclosure. The court ordered the Sheriff to produce unredacted versions of the I-247

_____

209 Wis. 2d 377, 387-88, 565 N.W.2d 140 (Ct. App. 1997) (explaining, "the existence of a statute exempting certain kinds of information from disclosure is not uniquely within the custodian's knowledge" and therefore a custodian's "failure to specifically cite the statutory exemption does not preclude us, or the trial court, from determining whether the Board was authorized to deny the request.").

[6] On June 11, 2015, the court of appeals temporarily stayed the circuit court's order compelling the Sheriff to provide I-247 forms pending review.

4

forms to Voces within forty-eight hours, but stayed the order until June 12, 2015.[7]

¶8 The court of appeals affirmed the circuit court. The court concluded that I-247 forms are not exempt from disclosure under Wisconsin public records law. The court concluded that "(1) no exception to disclosure under Wisconsin's open records law applies; and (2) the Sheriff failed to meet his burden of showing that the public interest in non-disclosure outweighs disclosure, given Wisconsin's very strong legislative intent and public policy favoring disclosure."[8]

¶9 First, the court of appeals rejected the Sheriff's argument that I-247 forms are exempt from disclosure under Wis. Stat. § 19.36 because a federal regulation, 8 C.F.R. § 236.6, prevented disclosure of immigration-related information in the possession of state or local entities.[9] The court reasoned that the regulation applied to only those individuals currently in custody of the federal government.[10] Because the individuals at issue in the present case were not currently in federal custody, the court of appeals reasoned, the federal regulation did not

---

[7] In the interim, the Sheriff petitioned for leave to appeal. But on June 17, 2015, the circuit court issued a final order, and the Sheriff filed a notice of appeal. Consequently, on June 24, 2015, the court of appeals dismissed the Sheriff's petition for leave to appeal as moot.

[8] Voces, 369 Wis. 2d 103, ¶18.

[9] Id., ¶40.

[10] Id., ¶28.

prevent the release of I-247 forms.[11]  Next, the court concluded that the public interest balancing test weighed in favor of disclosure.[12]

¶10  We granted the Sheriff's petition for review and now reverse.

## II.  DISCUSSION

### A.  Standard of Review

¶11  This is a review of a writ of mandamus.  Mandamus is a remedy that can be used "to compel a public officer to perform a duty of his office presently due to be performed."  State ex rel. Marberry v. Macht, 2003 WI 79, ¶27, 262 Wis. 2d 720, 665 N.W.2d 155.  "In order for a writ of mandamus to be issued, four prerequisites must be satisfied:  '(1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law.'"  Pasko v. City of Milwaukee, 2002 WI 33, ¶24, 252 Wis. 2d 1, 643 N.W.2d 72 (quoting Law Enforcement Standards Bd. v. Village of Lyndon Station, 101 Wis. 2d 472, 494, 305 N.W.2d 89 (1981)).

¶12 Our review requires us to interpret and apply Wisconsin public records law.  Statutory interpretation and application present questions of law that we review independently, while benefiting from the analyses of the circuit court and the court of appeals.  Osborn v. Board of Regents of

---

[11] Id.

[12] Id., ¶47.

University of Wisconsin System, 2002 WI 83, ¶12, 254 Wis. 2d 266, 647 N.W.2d 158 (Nichols v. Bennett, 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996)).

¶13 Moreover, our review also requires us to interpret a federal regulation, 8 C.F.R. § 236.6. We apply general principles of statutory interpretation when construing federal regulations. See State v. Busch, 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998) ("When interpreting an administrative regulation, we generally use the same rules of construction and interpretation as applicable to statutes."); Village of Lyndon Station, 101 Wis. 2d at 489 ("As a corollary to the rule that validly enacted administrative rules are given the effect of law, it is generally accepted that the rules and regulations of administrative agencies are subject to the same principles of construction as apply to the construction of statutes . . . ."); see also Bonkowski v. Oberg Indus., Inc., 787 F.3d 190, 199 (3d Cir. 2015) ("In interpreting a federal regulation, we look to well-established principles of statutory interpretation.").

B. Statutory Interpretation, General Principles

¶14 Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271

7

Wis. 2d 633, 681 N.W.2d 110 (citing Bruno v. Milwaukee Cty., 2003 WI 28, ¶¶8, 20, 260 Wis. 2d 633, 660 N.W.2d 656). Moreover, the "structure of the statute in which the operative language appears" is important. Id., ¶46. And, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46 (citing State v. Delaney, 2003 WI 9, ¶13, 259 Wis. 2d 77, 658 N.W.2d 416).

¶15 "The test for ambiguity generally keeps the focus on the statutory language: a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶47. And, "Wisconsin courts ordinarily do not consult extrinsic sources of statutory interpretation unless the language of the statute is ambiguous." Id., ¶50. Extrinsic sources are those "interpretative resources outside the statutory text—typically items of legislative history." Id. (citation omitted).

¶16 It is under this framework that we review whether I-247 forms are exempt from disclosure under the Wisconsin public records law.

### C. Wisconsin Public Records Law

¶17 Wisconsin public records law affords the public the right to inspect certain documents within the possession of a

state entity.[13] It "serves one of the basic tenets of our democratic system by providing an opportunity for public oversight of the workings of government." Nichols, 199 Wis. 2d 268, 273 (citing Breier, 89 Wis. 2d 417, 433-34). To that end, "we have a presumption of open access to public records, which is reflected in both our statutes and our case law." Osborn, 254 Wis. 2d 266, ¶13; see also Wis. Stat. § 19.31 (providing "it is . . . the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them"). "This presumption reflects the basic principle that the people must be informed about the workings of their government and that openness in government is essential to maintain the strength of our democratic society." Linzmeyer v. Forcey, 2002 WI 84, ¶15, 254 Wis. 2d 306, 646 N.W.2d 811 (citing Breier, 89 Wis. 2d at 433-34).

¶18 Nevertheless, the public's right to access records is not unrestricted. See Woznicki v. Erickson, 202 Wis. 2d 178, 194, 549 N.W.2d 699 ("However, the right to public access is not absolute."). "The strong presumption of public access may give

---

[13] The public records law applies only to "records." Record is defined expansively: "A 'record' subject to the Public Records Law is 'any material on which . . . information is recorded or preserved . . . which has been created or is being kept by an authority.'" Hempel v. City of Baraboo, 2005 WI 120, ¶25, 284 Wis. 2d 162, 699 N.W.2d 551. In the present case, neither party disputes that I-247 forms are records for purposes of Wisconsin public records law.

way to statutory or specified common law exceptions, or if there is an overriding public interest in keeping the public record confidential." Kroeplin v. Wisconsin Dep't of Nat. Res., 2006 WI App 227, ¶13, 297 Wis. 2d 254, 725 N.W.2d 286 (citation omitted); see also Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984) ("Thus, the general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential."). Accordingly, there are three ways in which a record may be exempt from disclosure: (1) the record is statutorily exempt; (2) the record falls under a common-law exemption; or (3) the public interest balancing test weighs in favor of non-disclosure. See Linzmeyer, 254 Wis. 2d 306, ¶¶23-24.

¶19 Under this framework, we first examine whether the records at issue are statutorily exempt from disclosure.[14] The legislature codified a presumption of public access. It follows, that the legislature is similarly free to codify which records are subject to public inspection and which records are statutorily exempt from inspection. See Wis. Stat. § 19.35(1)

_____

[14] Because we ultimately conclude that the I-247 forms at issue in the present case are exempt from disclosure under a statutory exemption, we do not address the contours of the common-law exceptions or weigh competing interests under the balancing test.

("Except as otherwise provided by law, any requester has a right to inspect any record." (emphasis added)).

¶20 There are statutory exemptions to the Wisconsin public records law's presumption of access that are codified in Wis. Stat. § 19.36. See, e.g., Wis. Stat. § 19.36(1)-(13). For the types of records described in the statute, the legislature has determined that they are categorically exempt from disclosure to the public.

¶21 Exemptions detailed in Wis. Stat. §§ 19.36(1)-(2) are of particular relevance in this case. These sections provide:

> (1) APPLICATION OF OTHER LAWS. Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).
>
> (2) LAW ENFORCEMENT RECORDS. Except as otherwise provided by law, whenever federal law or regulations require or as a condition to receipt of aids by this state require that any record relating to investigative information obtained for law enforcement purposes be withheld from public access, then that information is exempt from disclosure under s. 19.35(1).

Wis. Stat. §§ 19.36(1)-(2). As the text of the statute relates, § 19.36(1) prevents the release of any record that is exempted from disclosure under federal law. Similarly, § 19.36(2) exempts from disclosure any record "relating to investigative information obtained for law enforcement purposes."

¶22 Therefore, we examine whether federal law prohibits disclosure of I-247 forms. In the case now before us, it

11

follows that if 8 C.F.R. § 236.6 prohibits disclosure of information in I-247 forms, they are exempt from disclosure under Wisconsin public records law. At oral argument, Voces agreed, but contended that 8 C.F.R. § 236.6 did not prohibit disclosure of the information in I-247 forms.

D. 8 C.F.R. § 236.6

¶23 Our consideration of the text and purpose of 8 C.F.R. § 236.6 compels the conclusion that it applies to any detainee for whom an I-247 form has been issued by the federal government. As we explain below, to hold otherwise would flout the language and purpose of the federal regulation.

¶24 We begin with an examination of the text of 8 C.F.R. § 236.6 to determine its meaning. The regulation provides as follows:

> No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of the Service and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders. Insofar as any documents or other records contain such information, such documents shall not be public records. This section applies to all persons and information identified or described in it, regardless of when such persons obtained such information, and applies to all requests for public disclosure of such information, including requests that are the subject of proceedings pending as of April 17, 2002.

12

¶25 The court of appeals reasoned that the phrase "holds any detainee on behalf of" the federal government required that the individual be in federal custody at the time when I-247 form was served in order for 8 C.F.R. § 236.6 to apply.[15] The court of appeals reasoned that 8 C.F.R. § 236.6 applied only to those detainees who were then subject to the forty-eight hour hold requested by I-247 forms.[16]

¶26 In contrast, the Sheriff contends that the first sentence of 8 C.F.R. § 236.6 is definitional. He reasons that the clause "holds any detainee on behalf of" the federal government refers to those individuals subject to an immigration detainer insofar as the facility is or was housing, maintaining, or servicing them prior to the federal government's potential to obtain custody. Under this interpretation, 8 C.F.R. § 236.6 is not temporally limited; rather, it explains which types of entities and individuals are subject to the regulation. And, any individual that is subject to an I-247 request (an immigration detainer request) is a detainee who has been housed, maintained or provided services by a state or local entity, regardless of when that occurred.

¶27 Both of these interpretations are reasonable, as reasonably well-informed persons could interpret the text of 8 C.F.R. § 236.6 as the court of appeals has and as the Sheriff

---

[15] <u>Voces</u>, 369 Wis. 2d 103, ¶28.

[16] <u>Id.</u>, ¶¶28-29.

has. The existence of two reasonable interpretations compels the conclusion that the regulation is ambiguous. See Bruno, 2003 WI 28, ¶19.

¶28 When a regulation is ambiguous, we may consult extrinsic sources to interpret the regulation's meaning. See State v. Williams, 2014 WI 64, ¶19, 355 Wis. 2d 581, 852 N.W.2d 467 ("Finally, and most important, if the interpreting court concludes that the statute is ambiguous, the court may consider extrinsic sources such as legislative history to discern the meaning of the statute." (citing Kalal, 271 Wis. 2d 633, ¶51)). Consistent with this principle, we look to extrinsic sources to assist us in determining the meaning of 8 C.F.R. § 236.6.

¶29 The statement of purpose of 8 C.F.R. § 236.6 was provided by the agency that promulgated the regulation and was set out in the notices in the Federal Register. It demarcates three purposes underlying the regulation: (1) to protect privacy of detainees; (2) to guarantee uniform treatment of information pertaining to detainees; and (3) to prevent ongoing investigations from being adversely impacted. See Comm'r of Correction v. Freedom of Info. Com'n, 52 A.3d 636, 647-48 (Conn. 2012) ("The regulation was intended to ensure that the disclosure of information about detainees would be subject to a uniform federal policy, to protect the privacy of detainees, and, most significantly, to prevent adverse impacts on ongoing investigations and investigative methods.").

14

¶30 Indeed, the privacy interests of the detainees were a substantial concern. This interest is evinced in the statement of purpose of 8 C.F.R. § 236.6 as set out in the notices:

> By channeling requests for information through the FOIA, which contains a privacy exception, the rule also protects detainees' privacy. Just as the government has a substantial interest in protecting legitimate national security, intelligence and law enforcement functions under the FOIA, detainees may have a substantial privacy interest in their names and the personal information connected with their status as detainees.[17]

Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 FR 4364-01, 4366 (January 29, 2003). And, allowing public access to information about an individual could have grave consequences for that

---

[17] The notices of the regulation also explain:

> For example, individuals who were originally detained because of their possible connection to terrorism, have an overwhelming interest in not being connected with such activity. And particularly with respect to those individuals cooperating with the government's law enforcement investigations, there are powerful reasons why such persons would wish to conceal their identities and whereabouts. Indeed, other INS regulations expressly shield from disclosure information pertaining to or contained in an asylum application. See 8 CFR § 208.6(a). Contrary to some of the commenters' suggestions, the fact that certain detainees may wish to publicly identify themselves, which they are free to do, in no way undermines this assessment.

Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 FR 4364-01, 4366 (January 29, 2003).

individual. After all, "allowing such disclosures would be highly adverse to the privacy interests of a detainee who does not wish to be identified as a possible terrorist or who, after his release from detention, is cooperating with an ongoing government investigation." Comm'r of Correction, 52 A.3d at 648.

¶31 Another purpose of the regulation is to ensure the uniform treatment of the information contained within the forms. See Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 FR 19508-01, 19509 (2002) ("The rule bars release of such information by non-[f]ederal providers in order to preserve a uniform policy on the release of such information."). I-247 forms are federal records; the state does not generate or input information into them. The federal government has an interest in seeing that the information contained within the forms is treated uniformly by all facilities.

¶32 A final purpose of 8 C.F.R § 236.6 is "to prevent adverse impacts on ongoing investigations and investigative methods." Comm'r of Correction, 52 A.2d at 648; see also Am. Civil Liberties Union of New Jersey, Inc. v. Cty. of Hudson, 352 N.J. Super. 44, 69, 799 A.2d 629 (App. Div. 2002) ("The counties are not privy to the character and extent of federal investigations in progress nor, apparently, do they possess any independently acquired information regarding the role of the INS

16

detainees in those investigations.").   The notices containing the statement of purpose initially passed in 2002,[18] provide:

> Release of information about a specific detainee or group of detainees could also have a substantial adverse impact on ongoing investigations being conducted by federal law enforcement agencies in conjunction with the Service.   Even though an individual detainee may choose to disclose his own identity or some information about himself, the release by officials housing detainees of a list of detainees or other information about them could give a terrorist organization or other group a vital roadmap about the course and progress of an investigation.   In certain instances, the detention of a specific alien could alert that alien's coconspirators to the extent of the federal investigation and the imminence of their own detention, thus provoking flight to avoid detention, prosecution and removal from the United States.   Premature release of the identity of or information relating to a specific alien in detention

---

[18] The regulation was initially passed as a temporary regulation in 2002 before being permanently enacted in 2003. The regulation was promulgated in response to a request for documents pertaining to individuals detained by, what was at the time, the Immigration and Naturalization Service (INS).   In that case, "INS detainees [were] housed in the Hudson County Correctional Center and the Passaic County Jail pursuant to long-standing contracts between the INS and the counties." Am. Civil Liberties Union of New Jersey, Inc. v. Cty. of Hudson, 352 N.J. Super. 44, 58, 799 A.2d 629, 637 (App. Div. 2002).   The plaintiff requested the records of the individuals detained pursuant to these agreements, and a trial court in New Jersey ordered the jails to provide the records. Id. at 638.   As the Appellate Division of the New Jersey Superior court explained, "five days after the trial court's order and judgment were entered, the INS promulgated as an 'interim rule' a regulation barring disclosure of the information sought here, 8 C.F.R. § 236.6 (2002)." Id.   Based on the interim regulation, the court concluded that, "[t]o the extent the State laws involved may be viewed as requiring public disclosure of information regarding INS detainees, they would be in conflict with 8 C.F.R. § 236.6." Id. at 655.

could reasonably be expected to disclose the identity of a confidential source and techniques or procedures for law enforcement investigations or prosecution.

Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 FR 19508-01, 19509 (April 22, 2002).

¶33 Our examination of the purposes underlying 8 C.F.R. § 236.6 removes any ambiguity as to its meaning. We conclude that 8 C.F.R. § 236.6 is not temporally limited; it applies to all information pertaining to those individuals subject to I-247 forms. It is evident after exploring the purpose of the regulation that "detainee" is a generalized term; it refers to all individuals subject to an I-247 form.[19] It would be inconsistent with the three main purposes of 8 C.F.R. § 236.6 to hold that it applies only to information pertaining to those individuals presently in federal custody. And, "[a]ll of these purposes would be undermined by allowing state and local entities to disclose information about a detainee . . . subject only to their own policies and procedures." Comm'r of Correction, 52 A.3d at 648.

¶34 The regulation must be read to protect a detainee's information regardless of when an I-247 form was received and

---

[19] The inclusion of the phrase "such detainee" at the end of the second sentence of the regulation does not alter this analysis. "Such detainee" merely refers back to the phrase "any detainee" in the preceding sentence. 8 C.F.R. § 236.6. Accordingly, the phrase "such detainee," like the phrase "any detainee," is a categorical description and does not temporally limit the regulation.

18

regardless of whether a detainee is in the forty-eight hour hold requested in I-247 in order to protect a detainee's privacy. After all, the sensitivity of a detainee's information cannot, and we conclude does not, depend on when the I-247 form was received by the state or local entity. If the documents could be released at any time prior to the forty-eight hour period, then the privacy protections at the heart of 8 C.F.R. § 236.6 would be illusory.[20] As a consequence, the regulation must be interpreted to cover all information contained within an I-247 form regardless of whether the individual that is the subject of the detention request is solely in state or federal custody or has been released. Our conclusion that the regulation is not temporally limited is consistent with this directive.

¶35 Similarly, the federal government's interest in the uniform treatment of immigration-related records by all facilities requires that the regulation applies to all I-247 forms, without a temporal limitation. Stated otherwise, 8 C.F.R. § 236.6 controls I-247 information pertaining to detainees without regard for when a facility receives that form. State or local entities do not have discretion to decide whether I-247 forms may be released. A contrary interpretation would

---

[20] We note that the intent of those seeking the information does not diminish the detainee's privacy interest in the information. If the information can be accessed by one party, then it can be obtained by any other organization or individual that seeks the same information. This, of course, includes those individuals or organizations with potentially less noble aspirations than Voces.

19

vitiate consistency in treatment of I-247 forms and the information they contain.

¶36 Finally, the regulation is meant to protect sensitive information pertaining to government criminal or immigration-related investigations. Surely, such an important interest cannot succumb to the temporal limitations that an alternative interpretation of 8 C.F.R. § 236.6 would impose. For this reason alone, the regulation must be interpreted to protect the information contained within I-247 forms.

¶37 Accordingly, we conclude that the court of appeals inaccurately interpreted 8 C.F.R. § 236.6 when it added the requirement that an individual who is subject to a I-247 form must be in the custody of the federal government for 8 C.F.R. § 236.6 to apply. The regulation is not so narrow, and the word "custody" is conspicuously absent from its text. Section 236.6 applies to any individual subject to an I-247 immigration detention request. And, a different federal regulation discussing detainers distinguishes between "custody" and an individual subject to a detainer request:

> Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.

8 C.F.R. § 287.7 (2011).

20

¶38 Therefore, 8 C.F.R. § 236.6 protects all information contained within I-247 forms pertaining to detainees that are housed, maintained, or held in facilities run by state or private entities. Stated otherwise, the regulation is not temporally limited and does not apply only to those individuals in federal custody. Rather, 8 C.F.R. § 236.6 renders the I-247 forms that Voces seeks "record[s] . . . specifically exempted from disclosure by . . . federal law," under Wis. Stat. § 19.36(1). For similar reasons, these records also contain information obtained for federal law enforcement investigative purposes, and Wis. Stat. § 19.36(2) prevents their disclosure.[21]

¶39 We are not alone in our interpretation of 8 C.F.R. § 236.6. The Supreme Court of Connecticut also examined the purpose of 8 C.F.R. § 236.6 and concluded that the regulation prohibits disclosure of documents that pertain to those individuals that are no longer in state or federal custody. Comm'r of Correction, 52 A.3d at 649 ("Nothing in the language of the regulation differentiates between information about detainees who have been transferred to the custody of another

_____

[21] We note that our decision does not pass judgment on the desirability of the Sheriff's compliance or non-compliance with the Department of Homeland Security's immigration detention requests. Rather, the issue in the present case "involve[s] the nature and scope of information that must be made available to the public concerning INS detainees. The power to regulate matters relating to immigration and naturalization resides exclusively in the federal government." Am. Civil Liberties Union of New Jersey, Inc. v. Cty. Of Hudson, 799 A.2d 629, 654 (N.J. App. Div. 2002).

21

governmental entity and information about detainees who have been released."). In Commissioner of Correction, the Connecticut Supreme Court rejected the lower court's conclusion that "because the first sentence of 8 C.F.R. § 236.6 uses the present tense when it refers to any 'person . . . that houses, maintains, provides services to, or otherwise holds any detainee'; the regulation applies only to a person who currently engages in one of the described activities . . . ." Id. at 646 (internal citations omitted). Rather, the court accepted the federal government's reasoning and concluded that "the use of the present tense . . . [is] not a temporal limitation with a beginning and an end." Id. (internal quotation marks omitted). Accordingly, the court concluded that the regulation continues to prevent the release of I-247 forms even after a detainee has been released from custody. Id. at 649. Our interpretation, that the regulation is not temporally limited in application, is consistent with the Connecticut Supreme Court's holding.

¶40 Finally, we note that our opinion does not curb the presumption of openness that Wisconsin public records law so carefully protects. An overarching purpose of 8 C.F.R. § 236.6 is to channel requests for federal records through federal law; namely the Freedom of Information Act (FOIA).[22] See generally

---

[22] The notices explaining the purpose of the regulation state: "Accordingly, any disclosure of such records will be made by the Service and will be governed by the provisions of applicable Federal law, regulations, and Executive Orders. This rule does not address or alter in any way the Service's policies regarding its release of information concerning detainees; these

(continued)

5 U.S.C. § 552. After all, the federal government is in a better position to determine whether there are privacy and safety risks innate in releasing records that it created.

¶41 In the present case, the requested records, I-247 forms of individuals housed in Milwaukee County Jail, fall under the umbrella of 8 C.F.R. § 236.6. The individuals in the present case, all of whom are subject to I-247 requests, are detainees that were housed, maintained, or serviced by a local entity.[23] Accordingly, federal law mandates that information pertaining to these detainees contained in I-247 forms not be released.

¶42 Given that a federal law prevents the release of the information in I-247 forms, we conclude that both Wis. Stat. § 19.36(1) and Wis. Stat. § 19.36(2) apply to exempt I-247 forms from disclosure under Wisconsin public records law. As the text of the statute suggests, § 19.36(1) prevents the release of any document that is exempted from disclosure under federal law.

¶43 Similarly, Wis. Stat. § 19.36(2) exempts from disclosure any record containing information that federal law mandates not be released because it "relat[es] to investigative

---

policies remain unchanged." Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 FR 19508-01, 19509 (April 22, 2002).

[23] Neither party disputes that the Milwaukee County Sheriff's Department participates in ICE's detainer program, and Voces cited the Sheriff's participation in the program as one of the reasons it sought to obtain the requested forms.

information obtained for law enforcement purposes." And, as discussed above, 8 C.F.R. § 236.6 mandates that state or local entities are not to release information contained within I-247 forms. Therefore, both of these provisions exempt I-247 forms from disclosure pursuant to the provisions of Wisconsin public records law. Accordingly, the Sheriff cannot be compelled to produce them.

### III. CONCLUSION

¶44 In light of the foregoing, we need not reach the common-law exemptions or balancing test because we conclude that the I-247 forms are statutorily exempt from disclosure under Wisconsin public records law. Stated more fully, under Wis. Stat. §§ 19.36(1)-(2), any record exempted from disclosure pursuant to federal law is exempt from disclosure under Wisconsin law. And, federal regulation 8 C.F.R. § 236.6 precludes the release of any information pertaining to individuals detained by a state or local facility and I-247 forms contain such information. Accordingly, read together, Wis. Stat. §§ 19.36(1)-(2) and 8 C.F.R. § 236.6 exempt I-247 forms from release under Wisconsin public records law. Furthermore, because I-247 forms are statutorily exempt from release, the public interest balancing test has no application here.

*By the Court.*—The decision of the court of appeals is reversed; writ of mandamus is quashed.

¶45 Annette Kingsland Ziegler, J., did not participate.

24

¶46 ANN WALSH BRADLEY, J. (*dissenting*). Wisconsin's Public Records Law "serves one of the basic tenets of our democratic system by providing an opportunity for public oversight of the workings of government." Majority op., ¶17 (citations omitted). Relying on this basic tenet, Voces de la Frontera requests unredacted copies of federal immigration detainer forms issued to Milwaukee County Sheriff David Clarke by Immigration and Customs Enforcement ("ICE").

¶47 The circuit court determined that Wisconsin's Public Records Law requires the release of unredacted copies of the detainer forms. It explained that Voces de la Frontera made a compelling case and that Sheriff Clarke offered no good reason to justify any redaction.

¶48 The court of appeals affirmed. Noting uncontested facts, it rejected Sheriff Clarke's newly raised argument that an obscure federal regulation, 8 C.F.R. § 236.6, precluded release of the detainer forms.[1]

---

[1] 8 C.F.R. § 236.6 provides in relevant part:

No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. . . . (emphasis added).

¶49 Sheriff Clarke now contends that no detainer forms should be released.  He asserts that the forms are statutorily exempt from disclosure and that his office erred when it previously released redacted detainer forms to Voces.

¶50 Reneging on previously uncontested facts and relying on a belatedly cited obscure federal regulation——never before applied to state or local detainees——Sheriff Clarke tosses a "hail mary" pass to the Wisconsin Supreme Court.[2]

¶51 The majority catches the pass and runs with it, but unfortunately makes no forward progress for the people of this state.  Instead, a majority of this court loses ground, yet again chipping away at Wisconsin's long-standing commitment to open government.  See, e.g., Democratic Party of Wisconsin v. Wisconsin Dep't of Justice, 2016 WI 100, 372 Wis. 2d 460, 888 N.W.2d 584.

¶52 Once more a majority of this court reverses a unanimous court of appeals decision affirming a circuit court order requiring the release of records to the public, further undermining the principle that Wisconsin Public Records Law be construed "in every instance with a presumption of complete public access." Wis. Stat. § 19.31.

¶53 This time the majority rewrites a federal regulation by deleting the phrase "on behalf of the Service" from the

---

[2] A "hail mary" is "a long forward pass in football, especially as a last-ditch attempt at the end of a game, where completion is considered unlikely."  Random House Unabridged Dictionary 859 (2d ed. 1993).

2

regulatory language in order to reach its conclusion that yet another public records request must fail. Given the cumulative effect of the majority's approach, one wonders if a day will come when we awake to find that this continuous "chipping away" has substantially gutted Wisconsin's commitment to open government.

¶54 Contrary to the majority, I agree with the circuit court that Clark offers no good reason to counter the strong presumption of open access to these public records. I likewise agree with the unanimous court of appeals that the federal regulation does not statutorily exempt immigration detainer forms from release under Wisconsin's Public Records Law. Both the plain language of the federal regulation and its promulgation history establish that it applies only to detainees in the custody of the federal government.

¶55 Accordingly, I respectfully dissent.

I

¶56 I begin by setting forth more complete facts to provide the necessary context. After new federal guidelines were released, Voces de la Frontera ("Voces") submitted a public records request seeking copies of immigration detainer forms (I-247) issued by ICE to Sheriff Clarke's office. Following a delay without a response, Voces filed an action seeking the issuance of a writ of mandamus to compel the release of the detainer forms under Wisconsin's Public Records Law.

¶57 Sheriff Clarke eventually released redacted versions of the requested detainer forms. In reaching a determination

3

about what information to redact, Sheriff Clarke's record custodian explained that she consulted with ICE, and redacted certain information based primarily on ICE's advice.

¶58 Voces sought release of unredacted versions of the detainer forms. The circuit court ordered Sheriff Clarke to produce unredacted copies, concluding that Voces made a compelling case that it had a strong interest in ensuring its government was complying with federal guidelines. It further observed that "there was never a very good reason given as to why [] information should be redacted other than ICE [] believes it should be redacted."

¶59 Sheriff Clarke appealed, raising a new argument before the court of appeals that an obscure federal regulation, 8 C.F.R. § 236.6, precludes release of the redacted portions of the detainer forms. Relying on undisputed facts, the court of appeals several times observed that Sheriff Clarke "does not dispute the fact that the prisoners in question here were held on state charges which had not expired." Voces De La Frontera, Inc. v. Clarke, 2016 WI App 39, ¶28, 369 Wis. 2d 103, 880 N.W.2d 417; see also id., ¶¶25, 36.

¶60 The court of appeals rejected Sheriff Clarke's new argument, concluding that the plain language of the federal regulation applies only to detainees held on behalf of the federal government. Id., ¶28. Applying the balancing test, it further determined that Sheriff Clarke failed to meet his burden to overcome the strong presumption in favor of release of the unredacted detainer forms. Id., ¶47.

4

¶61 Having been unsuccessful in both the circuit court and the court of appeals, Sheriff Clarke now turns to this court. At issue is whether the detainer forms are statutorily exempt from disclosure pursuant to Wis. Stat. § 19.36(1)-(2).

II

¶62 The parties agree and the majority acknowledges that the requested I-247 forms are public records as defined by Wis. Stat. § 19.32(2). Majority Op., ¶17 n.13. Consequently, any analysis must begin with a strong presumption favoring release of the requested records. See Linzmeyer v. Forcey, 2002 WI 84, ¶15, 254 Wis. 2d 306, 646 N.W.2d 811.

¶63 The majority contends that read together Wis. Stat. § 19.36(1)-(2) and the federal regulation statutorily preclude release of the I-247 forms.[3] Majority op., ¶3. It posits that 8 C.F.R. § 236.6 prohibits release of any information pertaining to individuals detained in a state or local facility, despite

---

[3] Wisconsin Stat. § 19.36(1)-(2) (2013-14) provide:

(1) Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).

(2) Except as otherwise provided by law, whenever federal law or regulations require . . . that any record relating to investigative information obtained for law enforcement purposes be withheld from public access, then that information is exempt from disclosure . . . .

the fact that this obscure federal regulation has never before been applied to state or local detainees.[4] See id.

¶64 However, the majority's non-textual interpretation is trumped by the regulation's plain language and the agency's intent at the time of the regulation's promulgation. See Gardebring v. Jenkins, 485 U.S. 415, 429–30 (1988). The plain language of 8 C.F.R. § 236.6 provides:

> No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service . . . shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. . . . (emphasis added).

"Service" refers to the federal government's Immigration and Naturalization Service ("INS").[5] The phrase "on behalf of the Service" indicates that that the regulation applies only to

---

[4] Neither the majority nor the parties cite to any case that has previously applied 8 C.F.R. § 236 to detainees in state or local custody. Additional research yielded no such case.

[5] The INS promulgated 8 C.F.R. § 236.6 as an interim rule in April 2002, and adopted it as a final rule without change in January 2003. Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 Fed. Reg. 19508-11 (Apr. 22, 2002); 68 Fed. Reg. 4364-67 (Jan. 29, 2003). In March 2003, pursuant to the Homeland Security Act of 2002, INS was disbanded and replaced with three new federal agencies, one of which is ICE. U.S. Citizenship and Immigration Services, Overview of INS History 11 (2012), https://www.uscis.gov/sites/default/files/USCIS/History%20and%20 Genealogy/Our%20History/INS%20History/INSHistory.pdf. Therefore, in the context of this discussion of 8 C.F.R. § 236.6, references to the INS and ICE are used interchangeably.

detainees being held on behalf of federal immigration authorities.[6]

¶65 Likewise, the supplementary information published in the Federal Register in connection with the promulgation of 8 C.F.R. § 236.6 consistently makes clear that the regulation is limited to detainees held "on behalf of" federal immigration authorities. Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 Fed. Reg. 4364 (Jan. 29, 2003) ("This final rule governs the public disclosure by any state or local government entity . . . of . . . information relating to any immigration detainee being house or otherwise maintained . . . on behalf of the Immigration and Naturalization Service (INS or Service)"); 67 Fed. Reg. 19508 (Apr. 22, 2002) ("This rule will establish a

---

[6] Receipt of an I-247 form by a state or local law enforcement agency does not convert a state or local detainee into a federal detainee in the custody of ICE. The language of the I-247 form explains that it is simply a request from ICE to a state or local agency: **"IT IS REQUESTED THAT YOU:** Maintain custody of the subject for a period not to exceed 48 hours . . . beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject" (emphasis in the original).

Additionally, a federal regulation explains that a detainer serves to advise another law enforcement agency that the federal government seeks custody of a detainee presently in the custody of a state or local agency. 8 C.F.R. § 287.7(a); see also Galarza v. Szalczyk, 745 F.3d 634, 642 (3rd Cir. 2014) ("[D]etainers are not mandatory."); Milwaukee County Board of Supervisors, Resolution 12-135 (June 4, 2012), https://milwaukeecounty.legistar.com/LegislationDetail.aspx?ID=1 124069&GUID=3D583485-4F01-4B43-B892-D6FFE5D327BF ("[D]etainers are not mandatory but are considered 'requests'").

uniform policy on the public release of information <u>on Service detainees</u>") (emphasis added).

¶66 Despite the plain language of 8 C.F.R. § 236.6 and the clear indications in the Federal Register reiterating that the application of the regulation is limited to detainees in federal custody, the majority concludes otherwise. By positing that the regulation is not limited to detainees in federal custody, i.e. "8 C.F.R. § 236.6 is not temporally limited," the majority impermissibly rewrites the regulation, deleting words from it. <u>See</u> Majority op., ¶33.

¶67 The majority concedes as reasonable the court of appeals' conclusion that a detainee must be in federal custody at the time the detainer form was served in order for 8 C.F.R. § 236.6 to apply. Majority op., ¶¶25, 27. Nevertheless, it deletes words from the federal regulation to embrace an alternative interpretation. Majority op., ¶¶33-34.

¶68 The majority embraces a conclusion of ambiguity, as it must, in order to be free to borrow from extrinsic sources to support its contention that the federal regulation applies to <u>any</u> detainee with a federal immigration detainer──even those in state or local custody. Majority op., ¶¶27-28. By deleting words from the regulation to render it ambiguous, the majority undermines the principle that statutory exceptions under Wisconsin's Public Records Law must be clear and explicit.

¶69 As this court explained, "the general presumption of our law is that public records shall be open to the public unless there is a <u>clear</u> statutory exception . . . Exceptions

8

should be recognized for what they are, instances in derogation of the general legislative intent, and should, therefore, be narrowly construed; and unless the exception is explicit and unequivocal, it will not be held to be an exception." Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984) (emphasis added). If, as the majority contends, 8 C.F.R. § 236.6 is ambiguous and subject to alternative reasonable interpretations, it follows that the regulation does not present a "clear statutory exception" precluding release of the record to the public. See id.

¶70 Further evincing that 8 C.F.R. § 236.6 does not apply here is the fact that neither ICE nor Sheriff Clarke cited 8 C.F.R. § 236.6 as a justification for denying Voces' public records request until this case was on appeal.[7] Such a void

---

[7] At oral arguments, counsel revealed that Sheriff Clark's office consulted with two different ICE representatives and the ICE representatives did not cite 8 C.F.R. § 236.6 as justification for denying the release of the requested I-247 forms:

> The Court: [D]id ICE tell the Sheriff's office you cannot release any information or these records pursuant to 8 C.F.R. § 236.6?
>
> Counsel for Sheriff Clarke: They were not provided with that advice, no. The advice they received was certain specific information on these forms should be redacted and here are the reasons why under federal law under FOIA (Freedom of Information Act) ICE believed the information should be protected.
>
> The Court: Then it doesn't appear that ICE was applying § 236.6 to these forms because they oked the release of the names among other arguably personal identifiable information.

(continued)

9

highlights that this relatively obscure federal regulation was never intended to apply to detainees in state or local custody. Apparently both were unfamiliar with this obscure regulation upon which Clark and the majority now rely.

¶71 It is not surprising that neither ICE nor Sheriff Clarke was familiar with 8 C.F.R. § 236.6 in this context. After all, this relatively obscure regulation was promulgated to protect information about individuals detained by the federal government on suspicion of terrorism following the attacks of September 11, 2001. See Am. Civil Liberties Union of New Jersey, Inc. v. Cty. of Hudson, 799 A.2d 629, 648 (N.J. App. Div. 2002) ("the real focus of the regulation, as evidenced by the rationale presented in its preamble, may be seen to be on the facilitation of law enforcement efforts in the wake of September 11.").

¶72 Indeed, the drafting records of 8 C.F.R. § 236.6 are replete with references to federal 9/11 detainees. Absent from the Federal Register is any mention of the need to prevent the

---

Counsel for Sheriff Clarke: It appears that way. 236.6 is a relatively obscure provision and why it wasn't relied upon at the trial court level I am not sure. But I think it clearly applies to the facts of this case.

The Court: But not just at the trial court level, ICE itself was not applying 236, or were they?

. . .

Counsel for Sheriff Clarke: At the time of the open records request ICE did not tell Milwaukee County don't produce them because 236 applies.

10

release of information about detainees in state or local custody who may later be transferred to federal custody.[8]

¶73  In sum, I conclude that the plain language of 8 C.F.R. § 236.6 indicates that its application is limited to federal immigration detainees.  This conclusion is supported by the promulgation history of the regulation and the fact that neither ICE nor Sheriff Clarke referred to this relatively obscure regulation until this case was on appeal.  Accordingly, unlike the majority, I determine that Wis. Stat. § 19.36(1)-(2) when read in conjunction with the entire text of 8 C.F.R. § 236.6 do not statutorily exempt the detainer forms from disclosure.[9]

---

[8] See e.g., Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 Fed. Reg. 19510 (Apr. 22, 2002) ("Disclosure could reveal important information about the direction, progress, focus and scope of investigations arising out of the attack on September 11, 2001, and thereby assist terrorist organizations in counteracting investigative efforts of the United States. . . . In light of the national emergency declared by the President . . . with respect to the terrorist attacks of September 11, 2001, and the continuing threat by terrorists to the security of the United States, and the need immediately to control identifying or other information pertaining to Service detainees . . . ."); see also 68 Fed. Reg. 4366 (Jan. 29, 2003).

[9] The majority further missteps by concluding that the requested I-247 forms are exempt in their entirety without analysis of the possibility of redaction. Majority op., ¶3.  In so doing, the majority disregards the statutory requirement that when a record contains some information subject to disclosure and other information that is not, the record custodian "shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release."  Wis. Stat. § 19.36(6).  Thus, once again, a majority of this court "renders meaningless the statutory direction to redact."  Democratic Party of Wisconsin, 372 Wis. 2d 460, ¶121 (Abrahamson, J., dissenting).

¶74 Having concluded that the distinction between whether a detainee is in federal versus state or local custody is dispositive, I normally would turn next to apply that distinction to this case. But not here.

¶75 Before this case reached this court it was undisputed that the detainees in question were in state custody. The court of appeals repeatedly explained, "[i]t is undisputed that Sheriff Clarke held the jail prisoners in state custody and that custody had not expired at the time of the open records requests." Voces De La Frontera, 369 Wis. 2d 103, ¶25; see also id., ¶28 ("The Sheriff does not dispute the fact that the prisoners in question here were held on state charges which had not expired. . . . Here it is undisputed that the state custody had not ended."); id., ¶36 ("Here the twelve detainees were still in custody on their state charges . . . ").

¶76 However, during oral argument before this court Sheriff Clarke reneged on the previously uncontested facts. He now asserts that some of the detainees in question were in federal custody at the time Voces submitted this request.

¶77 Sheriff Clarke's attempt to reconstruct the factual record at oral arguments is unavailing. He is not requesting, pursuant to Wis. Stat. § 809.15(3), that this court supplement or correct the record because it does not accurately reflect what occurred in the circuit court. Rather, it appears he now wants to create a different factual record. Sheriff Clarke had the burden before the circuit court to present sufficient facts and legal arguments to overcome the presumption favoring release

12

of the requested records.  See Fox v. Bock, 149 Wis. 2d 403, 416, 438 N.W.2d 589 (1989).  As explained further below, he failed to meet his burden.  The time to develop a factual record is before the circuit court, not at oral arguments before this court.

### III

¶78  Having determined that 8 C.F.R. § 236.6 pertains to detainees in the custody of only the federal government and that no statutory exemptions precluding release apply here, I examine next whether the records should be released.  See Linzmeyer, 254 Wis. 2d 306, ¶24.

¶79  This court applies "a balancing test on a case-by-case basis to determine whether permitting inspection of the records would result in harm to a public interest which outweighs the public interest in opening the records to inspection."  Id., ¶25 (citation omitted).  As the party seeking nondisclosure, Sheriff Clarke has the burden of overcoming the presumption in favor of releasing the requested I-247 forms.  See Fox, 149 Wis. 2d at 416.

¶80  The balancing test is first applied by the records custodian.  Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979).  "If the custodian decides not to allow inspection, he must state specific public-policy reasons for the refusal.  These reasons provide a basis for review in the event of court action."  Id. (citations omitted); Fox, 149 Wis. 2d at 416-17.

13

¶81 Here, the records custodian explained that her decision to redact information from the I-247 forms was made pursuant to guidance provided by ICE. She stated, "[w]e work with other law enforcement agencies and if they tell me one of their numbers . . . is law enforcement sensitive, yes, I believe them." The records custodian did not cite 8 C.F.R. § 236.6 or another public policy reason as justification for her decision to not fully comply with Voces' public records request.

¶82 Nevertheless, the majority declares, "it is sufficient that [the records custodian] recognized that I-247 forms may contain sensitive information and accordingly took measures to ensure that such information was not improperly released" because "[w]e cannot expect a records custodian to have expertise in federal immigration law . . . ." Majority op., ¶5 n.5.

¶83 On appeal, Sheriff Clarke argues that "[t]he balancing test requires consideration of Wisconsin's presumption of privacy with respect to law enforcement records and personally identifiable information . . . ." He also cites several FOIA factors generally supporting these two public policies.

¶84 The need to protect privacy of law enforcement records is a valid public policy concern. Linzmeyer, 254 Wis. 2d 306, ¶30 (explaining that records of law enforcement investigations can be particularly sensitive and "are generally more likely than most types of public records to have an adverse effect on other public interests if they are released."). Additionally, as the Linzmeyer court explained, if the release of a police

14

record would interfere with an on-going prosecution or investigation, the general presumption of openness will likely be overcome. Id.

¶85 Here, however, Sheriff Clarke provides no details about how the information contained in the I-247 forms would actually affect the privacy concerns for law enforcement records or interfere with an on-going prosecution or investigation. Unlike a police report which contains details about a specific crime under investigation, the detainer forms contain generalized information, much of which Sheriff Clarke already disclosed on his website.

¶86 For example, evidence introduced in the circuit court revealed that during the course of this litigation, Sheriff Clarke's office posted on its website information about detainees in his custody. Four separate posts were introduced with each containing the name of a detainee, his photograph and other personally identifying information. In bold letters above each photograph appeared the word "Hold." Below the photograph appeared information that indicated that it was an immigration or ICE hold. This evidence undermines Clark's purported privacy concerns about ICE holds.

¶87 Sheriff Clarke further argues that the strong public interest in protecting a detainee's privacy and reputation precludes release of the records. Yet, Sheriff Clarke's concern about the detainees' privacy interests rings hollow considering the disclosures he made on his website of some of the very

15

information he now seeks to withhold from Voces. Before the circuit court Voces questioned:

> [I]s it accurate to say that the only difference between what Sheriff Clarke sua sponte on his own behalf publishes on his website about the immigration status of individuals in his custody and what is on the form and what has been redacted by Sheriff Clarke on this form under the pretext of a concern for individual privacy is that Voces' ability to monitor and surveil compliance with administrative priorities is impaired . . . ?

¶88 On the other side of the balancing test is Voces attempt to provide public oversight of law enforcement and immigration law implementation, specifically to ensure that Sheriff Clarke's office is complying with federal and state law. Before the circuit court, Voces explained that it has an interest in monitoring and collecting data to ensure that Sheriff Clarke's office is complying with federal immigration guidelines. Voces also expressed concern that non-compliance with federal guidelines would hinder law enforcement abilities by eroding public trust and collaboration between law enforcement and immigrant communities. The circuit court found these interests to be "compelling." I agree.

¶89 Further weighing in favor of disclosure is the fact that Voces seeks information about the actions of an elected official. See Democratic Party of Wisconsin, 372 Wis. 2d 460, ¶18 (citing Linzmeyer, 254 Wis. 2d 306, ¶29). Additionally, "the process of police investigation is one where public oversight is important." Linzmeyer, 254 Wis. 2d 306, ¶27.

¶90 Sheriff Clarke points to the important public interests of the need to protect "privacy with respect to law

16

enforcement records and personally identifiable information." Nevertheless, on balance, I conclude that he has failed to meet his burden. Sheriff Clarke has not established that the release of the I-247 forms would result in harm to the public interest outweighing the strong public interest in providing public oversight of an elected official to ensure compliance with federal and state law. Accordingly, I would affirm the court of appeals decision ordering the unredacted release of the I-247 forms.

¶91 For the foregoing reasons, I respectfully dissent.

¶92 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

17